637 A.2d 1008

**Robert M. CARPENTER and Merle R. Kintigh, Individually and t/d/b/a Kintigh and Carpenter, a/k/a Kintigh and Carpenter Fine Homes**

v.

**FEDERAL INSURANCE COMPANY, Bankers Standard Insurance Co., Insurance Company of North America, Erie Insurance Co., Ralph Michael Costello and Naomi S. Costello, His Wife, Kintigh Construction, Inc., Cherly L. Micklow, Administratrix of the Estate of Paul Micklow, t/d/b/a Micklow Electric Company, Halo Lighting, A Division of McGraw–Edison Company, Atlantic Inland, Inc. and Middle Atlantic Electrical Inspections, Inc. (Two Cases)**

**Appeal of ERIE INSURANCE COMPANY.**

**Appeal of BANKERS STANDARD INSURANCE COMPANY and Insurance Company of North America.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1993.

Filed Feb. 24, 1994.

112

Dennis J. Slyman, Greensburg, for Erie Ins.

Peter J. Hoffman, Philadelphia, for Bankers Standard and Ins. Co. of North America.

Robert P. Lightcap, Latrobe, for Carpenter and Kintigh.

Dara A. Decourcy, Pittsburgh, for Halo Lighting.

Richard F. Boyle, Greensburg, for Costello.

Before TAMILIA, CERCONE and HESTER, JJ.

TAMILIA, Judge.

Erie Insurance Company (Erie), Bankers Standard Insurance Company (Bankers) and the Insurance Company of North America (INA) appeal from the March 1, 1993 Order affirming the October 5, 1992 Order which held the appellant insurance companies owed insurance coverage and a defense to the plaintiffs in the underlying declaratory judgment action and appellees herein, Robert M. Carpenter and Merle R. Kintigh, t/d/b/a Kintigh and Carpenter a/k/a Kintigh and Carpenter Fine Homes. Plaintiffs were also awarded attorneys' fees and costs.[1]

Appellees sought a determination whether they were insured by the appellant insurance companies against the damages sought by Dr. and Mrs. R.M. Costello as a result of a January, 1986 fire which destroyed the home Kintigh and Carpenter had constructed for them in 1974. In the interest of judicial economy, we have set forth below the trial court's recitation of the facts explaining the relationship among all concerned parties.

> The plaintiffs in this [declaratory judgment] case are Robert M. Carpenter, Merle R. Kintigh, Kintigh and Carpenter, and Kintigh and Carpenter Fine Homes. Messrs. Carpenter and Kintigh were each engaged in the business of

1. These appeals, No. 00552 Pittsburgh, 1993 (Erie), and No. 00602 Pittsburgh, 1993 (Bankers and INA), were listed and heard consecutively before a panel of this Court and emanate from the same Court of Common Pleas case, No. 1506 of 1990. Accordingly, in the interest of judicial economy, a single opinion addressing all issues will be penned.

construction, and initially formed a partnership for the purpose of constructing residences in June of 1968. That partnership was variously known as Kintigh and Carpenter and/or Kintigh and Carpenter Fine Homes. In May, 1974, the partnership entered into agreements with Ralph and Naomi Costello to construct a home for them in Mount Pleasant Township, Westmoreland County, Pennsylvania, commencing construction in late May, 1974, and completing construction in November, 1975.

On September 29, 1978, the partnership formed Kintigh and Carpenter, Inc., a Pennsylvania Corporation, which continued the business of constructing homes, and transferred the assets, employees and contracts to construct in progress to the corporation. Essentially, Kintigh and Carpenter, Inc. was a continuation of the business of the partnership under the corporate form. On May 31, 1980, Carpenter withdrew from the corporation, selling his shares of stock, and the name of the corporation was changed to Kintigh Construction, Inc.

On January 8, 1986, the residence that Kintigh and Carpenter and/or Kintigh and Carpenter Fine Homes built for the Costellos was consumed by fire, being destroyed. On November 18, 1986, the Costellos filed suit, the underlying action to this matter, against Robert M. Carpenter and Merle R. Kintigh, individually and trading and doing business as Kintigh and Carpenter Fine Homes, a partnership, and Kintigh Construction, Inc., along with other defendants who are not directly involved in this Declaratory Judgment Action.

The matters raised in this Declaratory Judgment proceeding came about when the plaintiffs herein sought a defense and coverage regarding the claims made by the Costellos, and were denied defense coverage by the insurance companies here involved. A claim for coverage against Federal Insurance Company, the company which insured the partnership at the time that the home was constructed for the Costellos has been decided by a grant of a demurrer. . . . The Preliminary Objections in the nature of a

demurrer filed by Bankers Standard Insurance Company (Bankers) and the Insurance Company of North America (INA) were dismissed at the same time. . . . The policies of insurance of Bankers, INA and Erie Insurance Company (Erie) remain issues of contention for our purposes.

(Slip Op., McCormick, Jr., J., 10/7/92, pp. 2–4.)

The Bankers' manufacturers/contractors package policy at issue provided coverage from August 8, 1985 until August 8, 1986 and stated the named insured was R.M. Carpenter d/b/a Wineman and Carpenter, Inc. The INA excess blanket catastrophe liability coverage also extended from August 8, 1985 to August 8, 1986 and indicated the insured was R.M. Carpenter d/b/a Wineman and Carpenter, Inc. Erie's policies, a business catastrophe liability policy and a comprehensive general liability policy, both having a coverage period from February 1, 1985 to February 1, 1986, named Kintigh Construction, Inc., as the insured. When the Costellos filed suit, Bankers and INA denied coverage and refused a defense, and Erie defended Kintigh Construction, Inc., under reserve but denied coverage. As a result of appellees' declaratory judgment action, the court found, inter alia, coverage extended to Robert M. Carpenter as an individual, and the Erie policies necessarily provided coverage to Kintigh Construction, Inc.'s predecessors in interest. This appeal followed.

■ Bankers and INA argue the trial court erred by finding policies which listed "R.M. Carpenter d/b/a Wineman and Carpenter, Inc." as the named insured extended coverage to Robert M. Carpenter as an individual, for his liability as a member of the partnership which built the Costello home, Kintigh and Carpenter a/k/a Kintigh and Carpenter Fine Homes. Appellants contend the language of the policies provides when a corporation is listed as a named insured, its officers and/or directors, such as Robert Carpenter, are individually covered only when acting on behalf of that corporation. Because Carpenter was not acting on behalf of Wineman and Carpenter, Inc., with regard to the Costellos' suit, appellants argue the trial court erred by finding Bankers and INA owed a duty to defend and indemnify. We agree.

The Banker's declaration sheet listed the named insured as R.M. Carpenter, d/b/a Wineman and Carpenter, Inc. Directly below this information appeared: Named Insured Is: Corporation. INA's policy likewise listed M. Carpenter, d/b/a Wineman and Carpenter, Inc., as its named insured. This Court fails to find any basis for holding the wording identifying the named insured is ambiguous, capable of more than one meaning. Had the policies intended to include appellee Carpenter *as an individual,* those words would have been included in the policy sections identifying the insured. At the very least, the conjunction "and" would have been inserted. The named insured, as it stands, included Carpenter only with regard to his actions as an officer, shareholder and/or director of the corporation. Moreover, reading the policy in its entirety as mandated by *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983), and *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.,* 655 F.2d 521 (3rd Cir.1982), paying particular attention to the "who is covered" and "persons insured" clauses, supports a finding Carpenter's coverage extended only to those actions he performed within the scope of his duties for Wineman and Carpenter. To expect Bankers and INA to extend coverage to Carpenter for any and all actions relating to his profession, however dated, is unreasonable and would expose Bankers and INA to an incalculable risk, not one summarily assumed in the issuance of a standard corporation liability policy. Further, there is no basis for the trial court's finding an ambiguity existed ipso facto as a consequence of the conflicting interpretations by the parties involved.

■■■ Whether a trial court has correctly interpreted a writing, in ascertaining the legal duties which arise therefrom, is a question of law subject to review by this Court. *N.E.A. Cross v. National Fuel Gas,* 410 Pa.Super. 451, 600 A.2d 228 (1991), *appeal denied,* 530 Pa. 656, 608 A.2d 31 (1992). As the drafter of an insurance policy, it is incumbent upon the insurance company to delineate as precisely as possible the full extent of coverage. *Techalloy Co. Inc. v. Reliance Ins. Co.,* 338 Pa.Super. 1, 487 A.2d 820 (1984). Where the words of

an insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Standard Venetian Blind* and *St. Paul Fire, supra.* Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them. *Geist v. Niagara Fire Ins. Co.,* 173 Pa.Super. 587, 98 A.2d 223 (1953). We find Bankers and INA clearly and precisely identified their insureds to be Wineman and Carpenter, Inc., and any and all of those individuals acting on its behalf in their capacities as director, shareholder and/or officer. Accordingly, we vacate that portion of the Order holding Bankers and INA owed a duty to defend and indemnify R.M. Carpenter relating to the Costellos' underlying suit. It follows Bankers' and INA's share of the attorneys fees and costs ($19,686.39) is likewise vacated as no evidence of bad faith on the part of the insurers challenging coverage has been established.[2] *See U.S. Fire Ins. Co. v. Royal Ins. Co.,* 759 F.2d 306 (3rd Cir.1985); *Shearer v. Reed,* 286 Pa.Super. 188, 428 A.2d 635 (1981).

Appellant Erie presents five issues for this Court's consideration beginning with the allegation the court erred by finding Kintigh Construction, Inc., was a successor corporation to Kintigh and Carpenter, Inc., which, in turn, was a successor in interest to the original partnership known as Kintigh and Carpenter, and/or Kintigh and Carpenter Fine Homes. By doing so, appellant argues, the court erroneously imposed upon Erie the duty to defend and provide coverage under its policy insuring Kintigh Construction, Inc., for Merle R. Kintigh, as an individual, for his actions while a partner in the original business which Erie did not insure. The question before this Court is simply whether the trial court erred by finding Kintigh Construction, Inc., established in 1980, was a successor in interest to the original partnership formed in 1968.

**2.** The court awarded Kintigh and Carpenter fees and costs related to the underlying action brought by the Costellos ($20,218.50) and those relating to the declaratory judgment action ($19,154.28). Erie was ordered responsible for one-half of these amounts ($19,686.39) while appellants Bankers and INA shouldered the other half.

■ It is the general rule in this Commonwealth that the sale or transfer of a business' assets to a successor entity does not automatically include the liabilities of the predecessor. *Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 603 A.2d 602 (1992); *Husak v. Berkel, Inc.,* 234 Pa.Super. 452, 341 A.2d 174 (1975). However, like all rules, this tenet has its exceptions. The general rule of successor nonliability does not apply if, inter alia, the purchasing corporation is merely a continuation of the selling corporation. *Hill, supra; Simmers v. American Cyanamid Corp.,* 394 Pa.Super. 464, 576 A.2d 376 (1990).

■ We agree with the trial court's finding that with the exception of the entity's transformation from a partnership to a corporation and then a corporation owned by Kintigh and Carpenter to a corporation owned solely by Kintigh, "[i]n all other respects, the entity retained its basic structure, purpose, assets and employees. As such, the partnership, transmuted into a corporation, is a continuation of the business entity, and the liabilities and potential liabilities of the partnership are deemed to have carried over to the corporation." (Slip Op., McCormick, Jr., J., 10/5/92, p. 9.) Based on our review of the record, the 1980 transformation of Kintigh and Carpenter, Inc., into Kintigh Construction, Inc., was likewise a simple continuation of business as usual. Accordingly, the corporation insured by Erie was a continuation of the previous corporation and partnership and, as such, "was subject to the liabilities and potential liabilities of those predecessor entities." (Slip Op., McCormick, Jr., J., 3/1/93, p. 8.) Erie contracted to insure Kintigh Construction Inc., against those liabilities. Therefore, the trial court did not err by finding successor liability on the part of Kintigh Construction, Inc., and imposing upon Erie the duties to defend and provide insurance coverage to the corporation and to the individuals Kintigh and Carpenter, in their capacities as officers, directors or shareholders, relating to the Costellos' underlying suit for damages.

Next, Erie argues the trial court erred by awarding attor-

neys' fees and costs[3] after it found the insurer had acted in bad faith by failing to accept responsibility to defend and indemnify under its contract of insurance with Kintigh and Carpenter, Inc. We disagree.

The award of attorneys' fees and costs is within the discretion of the trial court whose decision we will not disturb absent an abuse of discretion. *First Pennsylvania v. National Union,* 397 Pa.Super. 612, 580 A.2d 799 (1990). If a duty to defend is found on the part of an insurer, it is also the insurer's responsibility to pay for attorneys' fees and costs incurred by the insured in the underlying action. *Id.* In the Costellos' suit, Erie provided a limited defense for Kintigh Construction, Inc.,[4] but refused to provide a defense for the corporation's predecessors in interest or Kintigh and Carpenter as individuals. Having found Erie did indeed have a duty to defend and provide coverage for the aforementioned appellees, but refused to do so, an award of attorneys' fees and costs relating to the Costello action was appropriate.

The matter of attorneys' fees and costs relating to the declaratory judgment action provides a more difficult problem for now the issue of bad faith comes into play. *See First Pennsylvania, supra* (an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover attorneys' fees if the insurer has, in bad faith, refused to defend the action brought by the third party). At first blush, because our finding of liability on the part of Erie for the underlying action was predicated upon an exception to the general rule of nonliability for successor corporations, it could be found Erie had a reasonable basis upon which to challenge its responsibility to provide coverage for and indemnity to appellees. However, our reason in affirming the trial court's award of fees and costs is grounded in Erie's responsibility as an insurer,

3. *See* footnote 2.

4. Erie entered its appearance for the corporation of Kintigh Construction, but provided a defense limited by a work product exclusionary clause.

skilled in the drafting of insurance documents and presumably educated in areas of law relating to an insurer's liability. Erie issued the policies in question on February 1, 1985,[5] approximately five years after Kintigh and Carpenter, Inc., became Kintigh Construction, Inc. This is not so long a period of time that a reasonable underwriter would not have made inquiries into the corporation's history in order to ascertain any possible pre-existing or future liabilities for activities occurring prior to the February 1, 1985 effective date. Moreover, we must consider Erie's opportunity to issue a binder so as to allow a period of time during which to ascertain whether the potential insured, herein Kintigh Construction, Inc., was indeed an insurance risk Erie wished to undertake. We find Erie had a duty to investigate its potential policy holder and all attendant risks. Had Erie conducted a thorough investigation, it would have determined its potential successor liability for the actions of the corporation/partnership prior to it becoming Kintigh Construction, Inc. By not doing so and thereafter refusing to defend based on its challenge to successor liability, Erie forced the appellees' collective hand to institute the action for declaratory judgment. To compel appellees to expend thousands of dollars to enforce their contractual right to a defense and indemnification would fly in the face of equity. Moreover, contrary to Erie's contention it did represent the entity of Kintigh Construction, Inc., we agree with the trial court Erie's representation, tempered by its decision to exclude its work product (see argument infra), amounted "to very little defense...." (Slip Op., McCormick, Jr., J., 3/1/93, p. 6.) Plus, this limited defense did not eliminate the remaining insureds' need to retain private counsel to provide them with an adequate defense.

Based on these facts as well as all the testimony and evidence of record, the trial judge reasoned Erie exhibited bad faith by denying coverage to its insureds and forcing a declaratory judgment action. We find no basis upon which to

5. There is no indication in appellant's brief if Erie insured appellees prior to this date.

disturb this ruling.[6]

Next, Erie argues the court erred by finding the work product exclusion included in its policies was inapplicable to this case. The exclusion provided there would be no coverage for

.    .    .    .    .

(15) **property damage** to **your products** arising out of the products or any part of them.

(16) **property damage** to work performed by **you** or on **your** behalf arising out of the work or any part of it including materials, parts or equipment furnished.

Paragraph 16, however, was deleted from the basic policy by an endorsement titled "Broad Form Property Damage Liability Coverage, and replaced by the following exclusionary clause:

(3) [We do not cover] **property damage** to work performed by **you** arising out of the work or any portion of it, or out of materials, parts or equipment furnished but only with respect to (a) the **Completed Operations Hazard** and (b) any classification stated on the **Declarations** as "including completed operations."

Erie contends these clauses preclude liability on its behalf for damage to the Costellos' house which occurred as a result of a light fixture which was allegedly defectively installed by a subcontractor.

The trial court reasoned "the purpose of a work products exclusion in a commercial liability insurance policy is to distribute the risks contemplated in the production or construction of a product" so that "if the product itself is flawed because of the failure of the insured [herein the appellee builders] in the work process, the insured must repair or replace it, but if the product's failure causes injury or damage to third parties, the insurer [herein Erie] is responsible for indemnification of the loss." (Slip Op., 10/5/92, p. 11.) Based

---

**6.** *See* footnote 2. Although Bankers and INA have been relieved of their obligation to pay attorneys' fees and costs, Erie remains liable for its 50 per cent share equaling $19,686.39.

on this reasoning, the trial court found the facts before it presented the exact situation wherein the work products exclusion clause would not apply. If the insured contractor or any subcontractor had been required to repair or replace some part of the Costello home because of negligence in the original construction, the work product exclusion would have applied. However, because the court found the damages to the Costello home were damages to the property of third parties as contemplated in the policy coverage as a completed operation, the court ruled the work product exclusion was inapplicable and Erie was responsible to compensate the Costellos for their loss.

The reason for work product exclusions is somewhat analogous to exclusions for bailment or care, custody and control situations which is clearly explained in *Slate Construction Co. v. Bituminous Casualty Corp.*, 228 Pa.Super. 1, 323 A.2d 141 (1974).

With respect to the exclusion from coverage of property damage to property in the "care, custody or control" of the insured, one commentator has noted: "There are several different reasons for such an exclusion in the policy. Fundamentally, were it not for the exclusion there would be a greater moral hazard as far as the insurance company is concerned. It also eliminates the possibility of the insured making the insurance company a guarantor of its workmanship.

"The liability policy contemplates payment generally in situations where the ordinary degree of care is the measure of liability. The premium is determined on that basis. Liability for damage to property in charge of or in the care, custody or control of the insured where there is a bailment is controlled by different rules of law, and as a practical result the hazard is greatly increased.

"There is usually some form of insurance available to cover injury to or destruction of the excluded property at a higher premium which is commensurate with the risk. The exclusion is to eliminate securing the same coverage under a liability policy at cheaper rates."

*Id.* at 5–6, 323 A.2d at 144, *quoting* Cooke, Jr., *Care, Custody or Control Exclusions,* 1959 Ins.L.J. 7, 9.

Furthermore, should the work product exclusion be found applicable as to the contractor, exclusionary clause three did not address the potential liability of any subcontractor.[7] The Costellos' complaint averred their damage was caused by work completed by a subcontractor whose work product, according to clause 3, was NOT excluded from coverage. The clause in and of itself supports a finding the contested endorsement was not intended to exclude the work of the subcontractors employed by the partnership in the construction of the Costello home. We agree with the trial court the work product exclusionary clause was inapplicable to the factual scenario with which we are faced.

Having found each of appellant/Erie's arguments devoid of merit, we affirm that portion of the March 1, 1993 Order pertaining to Erie Insurance Company.

Based on the foregoing reasons of law and fact, we vacate that portion of the March 1, 1993 Order holding appellants Bankers and INA owed a duty to defend and provide coverage for Robert Carpenter as an individual. Attorneys fees and costs relating to plaintiffs' declaratory judgment action and charged to appellants Bankers and INA are likewise vacated. The Order as it relates to appellant Erie is affirmed in its entirety.

Jurisdiction relinquished.

---

7. The words "or on your behalf," included in the original exclusion clause (16), were omitted from the work product exclusion contained in exclusion (3). By this omission, the work product exclusion, if otherwise applicable, would be limited to the contractor's work. This becomes critical as the Costellos' allegation of negligent installation is levied at the subcontractors.