**MARINE OFFICE OF AMERICA CORPORATION, as Attorneys in Fact for Continental Insurance Company,**

v.

**QUARRY ASSOCIATES, INC.**

Civil Action No. 95–2309.

United States District Court,
E.D. Pennsylvania.

May 12, 1997.

Dante Mattioni, Mattioni, Mattioni & Mattioni, Philadelphia, PA, Harry A. Gavalas, Timothy G. Hourican, Chalos & Brown, New York City, for Plaintiff.

Galen D. Hawk, King of Prussia, PA, Paul Crowley, Exton, PA, for Defendant.

## *MEMORANDUM*

RAYMOND J. BRODERICK, District Judge.

Presently before the Court in this declaratory judgment action are motions by both parties for summary judgment. Plaintiff Marine Office of America Corporation ("Marine") issued a comprehensive general liability policy on behalf of Continental Insurance Company to building contractor J.E. Brenneman Company ("Brenneman"). Marine seeks a declaration that the insurance policy does not cover damages which may be awarded to Quarry Associates, Inc. ("Quarry") in an action currently pending in the Delaware County Court of Common Pleas, captioned *Quarry Associates v. J.E. Brenneman Company* (Civil Action No. 88–13409). In that action, Quarry claims that Brenneman breached their contract and negligently installed foundation piles for Quarry's building, causing the building's foundation to settle four inches.

Marine, as attorneys in fact for Continental Insurance Company, instituted this declaratory judgment action against Quarry on April 19, The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1993). On June 11, 1996, the Court denied Quarry's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join Brenneman as a necessary party. *Marine Office of Am. Corp. v. Quarry Assocs., Inc.,* No. 95–2309, 1996 WL 325114 (E.D.Pa. June 11, 1996). At a subsequent pretrial conference, the parties indicated that there were few, if any, issues of material fact in dispute. Accordingly, the Court directed the parties to conduct discovery and submit a stipulation of facts and motions for summary judgment concerning the construction of the insurance policy.

The insurance policy at issue is a standard comprehensive general liability ("CGL") policy covering "occurrences" as defined by the policy. The cross-motions for summary judgment raise the following two issues: (1) did an "occurrence" take place while the policy was in force providing coverage for Quarry's claims against Brenneman?; and (2) do any policy exclusions limit coverage?

Because the Court has determined that Brenneman's alleged negligence in driving

the piles constitutes an "occurrence" during the policy period and that the policy exclusions exclude recovery for damage to work performed by Brenneman, declaratory judgment will be awarded as follows: in the event Brenneman is found negligent in the underlying state court action, Continental Insurance Company must pay the property damages awarded to Quarry which were proximately caused by Brenneman's negligence, except for damages to the foundation piles installed by Brenneman.

## I. FACTS

The parties have stipulated to the following material facts: Quarry Associates, Inc. owns property located at 740 South Chester Road in Swarthmore, Pennsylvania. Until the mid–1960's, the property had been the site of a stone quarry. After the mid–1960's, the property was used for uncontrolled filling and dumping of miscellaneous material such as dirt, concrete, steel, wood, and trash. The depth of the fill ranged from approximately 6.4 feet in the front of the property to more than sixty-seven feet at the rear of the property.

In or about 1984, Quarry embarked on a project to construct a medical facility on top of the former quarry. Quarry planned a two-story steel frame structure of approximately 16,000 square feet. Because of the uncontrolled fill at the site, Quarry's architects concluded that the foundation of the building required support from steel piles driven approximately seventy-five feet below the surface of the fill into the rock below. J.E. Brenneman Company, a subcontractor, entered into a contract with Quarry on October 3, 1985, to install the foundation piles in accordance with Quarry's designs. Before beginning construction, Brenneman obtained a CGL policy from Continental Insurance Company through its underwriting agent, Marine. The policy, number L2927679, was effective from September 1, 1985 through September 1, 1986.

Brenneman drove the piles from October 11, 1985 through October 15, 1985. Brenneman's records indicate that the piles were driven in a manner which would support forty tons per pile, as specified by the contract. However, some of the piles were not driven deep enough to encounter subsurface rock underneath the uncontrolled fill. These piles encountered metal, concrete, or other materials which had been dumped in the quarry and consequently "hung up" in the fill.

Quarry's contractors poured concrete grade beams and pile caps over the piles in November, 1985 to complete the foundation system. Following installation of the foundation, Quarry halted construction for more than a year because of environmental problems at the site. When construction resumed in December, 1986—after Brenneman's insurance policy had expired—a mason discovered that the foundation in the rear portion of the building had settled four inches below the rest of the building. Despite these problems, the building was completed in the summer of 1987.

Shortly after construction had finished in 1987, Quarry discovered structural cracks in the building's concrete floor and masonry walls. An investigation revealed that several of the piles driven by Brenneman in 1985 had failed to reach the subsurface rock underneath the quarry by twenty to thirty feet. Because the piles were seated in uncontrolled fill rather than the underlying rock, the foundation system settled approximately four inches from the time the foundation was poured in November, 1985 to December, 1986.

Marine and Quarry have stipulated that the building's foundation settled during the period of November, 1985 through September 1, 1986, while Brenneman's insurance policy was in force. The stipulation of fact states that "the foundation system and piles in the rear of the building settled during the period November, 1985 through September 1, 1986 while the subject insurance policy was in effect." See Stipulation ¶ 33. The parties also agree that the foundation's settling was caused by Brenneman's drilling of the piles into uncontrolled fill instead of subsurface rock. This defect made the rear wing of the building unstable and unsafe, requiring Quarry to demolish that portion of the building.

In October, 1988, Quarry filed a breach of contract and negligence action against Brenneman in the Court of Common Pleas of Delaware County, captioned *Quarry Associates v. J.E. Brenneman Company* (Civil Action No. 88–13409). On September 11, 1990, while the state court action was still pending, Brenneman filed a petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania seeking protection under Chapter 11 of the United States Bankruptcy Code. Pursuant to the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (1993), all actions against Brenneman, including Quarry's state court action in Delaware County, were stayed.

On September 24, 1991, Quarry and Brenneman entered into a stipulation approved by the bankruptcy court to modify the stay. The stipulation permitted Quarry to proceed against Brenneman, providing that "any recovery of any kind or nature shall be limited only to proceeds of available insurance coverage of Brenneman under ... policies covering Brenneman in 1985." Thus, the bankruptcy court permitted Quarry to proceed against Brenneman for the sole purpose of establishing Quarry's right to recover under Brenneman's insurance policies and limited its recovery to the terms of those policies.

On September 18, 1992, Marine issued Brenneman a reservation of rights and agreed to defend Brenneman in Quarry's state court action. The parties agreed, with the approval of the state court judge, to continue the state court trial pending disposition of this declaratory judgment action.

## II. STANDARD OF REVIEW

Because the material facts in this case are not in dispute, the issues before the Court rest on the meaning of the relevant sections of the insurance policy issued to Brenneman. Former Chief Justice Roberts of the Pennsylvania Supreme Court has articulated the general principles for interpreting insurance policies under Pennsylvania law:

The principles governing our interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983) (internal citations omitted). If possible, courts should read insurance policies to avoid ambiguities. "An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning," and not "by the mere fact that the parties do not agree upon the proper construction." *Ryan Homes, Inc. v. Home Indem. Co.*, 436 Pa.Super. 342, 647 A.2d 939, 941 (1994) (citations omitted).

Under Pennsylvania law, "the insured bears the burden of proving facts that bring its claim within the policy's affirmative grant of coverage." *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir.1996) (citation omitted). "By contrast, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage...." *Id.* (citations omitted).

## III. DISCUSSION

Marine seeks a declaration that Continental Insurance Company is not liable for the damages claimed against its insured, Brenneman, in an underlying state court action brought by Quarry. An insurer's duty to provide coverage is a separate and distinct obligation from its duty to defend, which is not at issue in this declaratory judgment action since Marine has agreed to defend Brenneman. *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1368 (1987). "[T]he question of whether a duty to indemnify arises depends upon the type of claim in issue." *Creed v. Allstate Ins. Co.*, 365 Pa.Super. 136, 529 A.2d 10, 12 (1987).

The Court will review the claims alleged by Quarry against Brenneman in the under-

lying state court action as well as the terms of the CGL policy issued by Marine and Continental to Brenneman. First, the Court will consider whether Quarry's claims for negligence and breach of contract constitute an "occurrence" while the insurance policy was in force. Then, the Court will consider whether any policy exclusions limit coverage.

### A. Existence of an "Occurrence" During the Policy Period

The insurance policy issued to Brenneman is an "occurrence" policy covering property damage caused by an occurrence while the policy is in force. "An 'occurrence' policy protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the policy period." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2926 n. 3, 57 L.Ed.2d 932 (1978).

The policy provides that "the Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... property damage to which this insurance applies, caused by an occurrence...." Continental Policy No. L2927679 at § I.B. Therefore, the key terms determining the applicability of the policy are "occurrence" and "property damage."

The policy defines the term "occurrence" as follows:

> Occurrence means an accident, including injurious exposure to conditions, which result during the policy period, in ... property damage neither expected nor intended from the standpoint of the insured against whom the claim is brought....

Policy No. L2927679 at Endorsement No. 7 ("Amended Definition of Occurrence"). The policy defines the term "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom; or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is

caused by an occurrence during the policy period.

Policy No. L2927679 at Definitions. These terms are clear and unambiguous; therefore, the Court must give effect to them. *See Gene & Harvey Builders., Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 512 Pa. 420, 517 A.2d 910, 913 (1986) (interpreting a similarly worded policy); *Standard Venetian Blind,* 469 A.2d at 566.

■ The parties' principle disagreement involves which event in the facts set forth above constitutes an "occurrence" under the policy. Marine contends that the relevant "occurrence" did not take place until Quarry's building suffered structural damage in its floor and walls, which occurred after the insurance policy had expired. Quarry, on the other hand, contends that the relevant "occurrence" took place when the foundation first settled, which occurred while the policy was still in force. Accordingly, the Court must determine whether the settling of the foundation system or the structural damage to the building constitutes an "occurrence" under the policy. The issue of *whether* there was an occurrence and *when* it occurred are closely intertwined, since the policy defines the term "occurrence" as an accident which results in property damage during the policy period.

### 1. Summary of Plaintiff's and Defendant's Legal Positions

The Court will briefly summarize the positions of each party. Marine contends that no occurrence took place within the policy period of September 1, 1985 to September 1, 1986. First, Marine contends, although the alleged negligent act of drilling the foundation piles occurred during the policy period, Quarry neither suffered nor discovered physical damage to its building until after the policy had expired. Marine cites *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56 (3d Cir.1982), for the proposition that no coverage is afforded where an insured commits a tortious act during a policy period but the plaintiff is not injured until after the policy expires. Essentially, Marine claims that Quarry could not have sustained injury to its building prior to the expiration of the

policy since only the foundation and not the building had been constructed by that time.

Marine also contends that Brenneman's alleged breach of contract and negligence do not amount to an "occurrence" under the policy, because neither claim constitutes an "accident" as required by the policy's definition of an occurrence. Finally, Marine claims that Quarry suffered no "property damage" as defined by the policy, since Quarry's building was damaged after the policy expired.

Quarry counters these arguments by claiming that the settling of the foundation constitutes an "occurrence" within the policy's period of coverage. Although Quarry failed to discover physical damage to its building until after the insurance policy had expired, it contends that the cause of those damages, namely the settling of the foundation, took place while the policy was in force. Moreover, Quarry claims that the effects of the sinking foundation led to immediate injury within the policy period even though the injury did not become apparent until after the policy had expired. Quarry compares its injury to asbestosis injuries, where some courts have found that "occurrences" triggering coverage take place at the time of exposure to harm and continue through manifestation of the injury. *See, e.q., J.H. France Refractories Co. v. Allstate Ins. Co.,* 534 Pa. 29, 626 A.2d 502 (1993); *ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 764 F.2d 968 (3d Cir.1985) (applying Pennsylvania law).

Quarry also contends that the term "accident" as used in the policy should be construed broadly to include unintended and unexpected events, so that Brenneman's failure to drill the foundation piles to a sufficient depth constitutes an "accident." Finally, Quarry claims that the insurance policy's "property damage" provision permits recovery for damage to its building, since this loss was caused by the settling of the foundation system during the policy period.

2. *Coverage Limited to Accidental Losses*

In order to resolve the issue of whether an occurrence took place within the policy period, the Court must first determine whether Brenneman's failure to drive the piles to a

sufficient depth constitutes an "accident." The insurance policy in this case, like all standard CGL policies, limits coverage to unexpected or unintended damages. Both courts and commentators have recognized the rationale for limiting insurance coverage to fortuitous losses:

> Insurance involves the transfer from the policyholder to the insurer of the risk of possible losses. Thus, by definition, insurance is not available for losses that the policyholder knows of, planned, intended, or is aware are substantially certain to occur.

Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 8.02 at 306 (8th ed.1995); *see also Koppers,* 98 F.3d at 1447; *Appalachian,* 676 F.2d at 63; *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.,* 467 F.Supp. 17, 20 (E.D.Pa.1979).

Quarry's state court complaint alleges negligence and breach of contract by Brenneman in failing to drive the piles to a sufficient depth. Quarry's claim for breach of contract is not covered by the insurance policy, since a "breach of contract ... is not an accident or occurrence contemplated or covered by the provisions of a general liability insurance policy." *Redevelopment Auth. of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 589 (1996). "The purpose and intent of such an insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." *Id.* (citations omitted). *See also* Appleman, *Insurance Law and Practice* (Berdal ed.1979), § 4493 at 55.

Quarry's claim based upon negligence, however, is covered by Brenneman's insurance policy. "Courts universally have interpreted liability coverage provisions.. as referring to liability sounding in tort, not in contract." *Id.* 685 A.2d at 591 (citation omitted). Negligence encompasses accidental, unintended actions. *See* Appleman, *Insurance Law and Practice* (Berdal ed.1979), § 4492.03; Hugh E. Reynolds & Patrick L. Dunn, "General Liability Coverage for Prop-

erty Damage Due to a Contractor's Negligent Construction," 13 *Construction Lawyer* 1, 33 (Aug.1993).

In the state court action, Quarry's negligence claim against Brenneman is based on the allegation that Brenneman negligently installed the foundation piling on the property owned by Quarry, and that Brenneman's negligence was the proximate cause of damage to the foundation, floor, and walls of Quarry's building. The settling of the foundation piles and the resulting damage were unintended, unexpected accidents. There is no allegation that Brenneman intentionally or willfully caused Quarry's building to settle. Rather, according to the parties' stipulation, Brenneman drilled the foundation piles in a manner sufficient to support the weight specified by the contract but insufficient to reach solid rock underneath the quarry.

Pennsylvania courts have clearly held that allegations of negligence are included within the definition of an "accident." *See, e.g., Lancaster Area Refuse Auth. v. Transamerica Ins. Co.,* 437 Pa. 493, 263 A.2d 368, 369 (1970) (adopting Judge Hoffman's dissenting opinion below, at 214 Pa.Super. 80, 251 A.2d 739, 741–742 (1969)); *Barber v. Harleysville Mut. Ins. Co.,* 304 Pa.Super. 355, 450 A.2d 718, 720 (1982); *Moffat v. Metropolitan Cas. Ins. Co. of N.Y.,* 238 F.Supp. 165, 171 (E.D.Pa.1964) (citations omitted) (interpreting Pennsylvania law).

The insurer in this action misrelies on two Pennsylvania-cases to support its position that Brenneman's actions were not accidental and therefore not covered by its policy. In *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 512 Pa. 420, 517 A.2d 910 (1986), the Pennsylvania Supreme Court reviewed a declaratory judgment action in which an insurance company disclaimed coverage for losses alleged against a contractor when the land on which it had built a house subsided. Similarly, in *Solcar Equip. Leasing Corp. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 414 Pa.Super. 110, 606 A.2d 522 (1992), the insurance company disclaimed coverage for losses stemming from a poorly constructed building foundation. In both cases, with CGL policies defining "occurrence" similarly to the instant policy, Penn-

sylvania courts found in favor of insurers on the ground that the contractors' activities were not accidental. *Gene & Harvey Builders,* 517 A.2d at 913; *Solcar,* 606 A.2d at 528.

These two Pennsylvania cases, however, are distinguishable. In *Gene & Harvey Builders,* the homeowners complained that the contractor intentionally failed to prevent their house from settling because the contractor "concealed the presence of sinkholes and filled them under cover of darkness" and "misrepresented the condition of the premises to the buyer-homeowners." *Gene & Harvey Builders,* 517 A.2d at 913. Under these facts, the alleged damage was not accidental or fortuitous since during construction the contractor intentionally concealed its failure to properly construct the foundation. In contrast, nothing in the stipulation of the parties in this action or in the state court complaint indicates that Brenneman's alleged failure to properly install the foundation piles to a sufficient depth was intentional. The damages from Brenneman's alleged negligence were accidental and fortuitous, because such harm was neither known, apparent, designed,.intended, nor expected by Brenneman. *See Nationwide Prop. & Cas. Ins. Co. v. Feryo Hearing Aid Serv., Inc.,* 895 F.Supp. 85, 87 (E.D.Pa.1995) (defining "occurrence" under Pennsylvania law as negligent, non-intentional conduct); Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 8 (8th ed.1995).

Turning to the *Solcar* case, upon which Marine also relies, the Superior Court apparently relied on *Gene & Harvey Builders* and applied the holding of an intentional tort case to the simple negligence allegations in *Solcar. Solcar,* 606 A.2d at 527 (citing *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 512 Pa. 420, 517 A.2d 910 (1986)). This Court cannot agree with the Superior Court's application of *Gene & Harvey Builders* to the facts in *Solcar. Gene & Harvey Builders* involved intentional conduct, and therefore non-accidental losses, whereas *Solcar* involved negligence. As heretofore discussed, the Pennsylvania Supreme Court has clearly held that allegations of negligence are included within the defini-

tion of accident. *Lancaster Area Refuse Auth.*, 263 A.2d at 369.

█ The foregoing analysis of Pennsylvania law, the parties' stipulations of fact, and the state court complaint leads the Court to the conclusion that the damages stemming from Brenneman's alleged negligence are accidental losses covered by the definition of "occurrence" in the insurance policy issued by Continental and Marine to Brenneman. Breach of contract damages, however, are not covered by the insurance policy. Accordingly, the Court holds that the negligence damages alleged by Quarry were fortuitous, accidental losses initially falling within the scope of coverage under the Continental insurance policy.

### 3. *Trigger of Coverage*

Having determined that Brenneman's alleged negligence resulted in accidental damages as required by its insurance policy, the Court must next consider whether the policy was in force when this occurrence took place. The Third Circuit has set forth a test applied by a majority of state courts for determining whether an occurrence takes place within a policy period. *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61–62 (3d Cir.1982). The Third Circuit found that the district court must first identify the occurrence, and then determine when the occurrence took place. *Id.*

Identifying a single occurrence or multiple occurrences is performed by utilizing a "cause" test. "The general rule is that an occurrence is determined by the cause or causes of the resulting injury." *Id.* at 61. "Using this analysis, the court asks if '[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages.'" *Id.* (citations omitted). Applying the general rule to the facts of this case, the parties have stipulated that Quarry's damages can be traced to Brenneman's alleged failure to drive the foundation piles to a sufficient depth. Therefore, the single occurrence for purposes of insurance coverage shall be defined as Brenneman's drilling of the piles in October, 1985.

█ After utilizing a "cause" test to determine the existence of a single occurrence or multiples occurrences, the court employs an "effect" test to determine when the occurrence took place. As the Third Circuit explained in *Appalachian:*

> While the "cause" test is appropriate for determining whether there is a single occurrence or multiple occurrences, it is not applicable in determining when an occurrence takes place. We hold that the determination of when an occurrence happens must be made by reference to the time when the injurious effects of the occurrence took place. "There can be no question that the aspect of the occurrence which must take place within the policy period ... is the 'result,' that is, the time when the accident or injurious exposure produces personal injury."

*Appalachian*, 676 F.2d at 61–62 (citations omitted). The Court has concluded that there should be no distinction between "personal injury" and "property damage" in adopting *Appalachian's* "effect" test for determining when an occurrence takes place. Therefore, the crucial issue in this case is whether Brenneman's alleged negligence in driving the foundation piles produced property damage to Quarry within the policy period of September 1, 1985 to September 1, 1986.

As the Third Circuit recognized in *Appalachian*, applying the "effect" test is not always straightforward. In many cases it is difficult to ascertain precisely when damage occurs because of the lapse of time between its initial cause and its resulting effects. Courts have adopted different "trigger of coverage" theories to help resolve this problem. For example, courts have employed: (1) an exposure rule where injury occurs at the time of exposure to harm; (2) a manifestation rule where injury occurs at the time the injury becomes apparent or is discovered; (3) a "double trigger" or "triple trigger" rule involving a hybrid of the exposure and manifestation theories; and (4) an injury in fact rule where injury occurs at the time of actual harm. *See, e.g.,* Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 9.03 (8th ed.1995) (discussing different trigger of coverage theories).

Therefore, the Court must choose the appropriate theory to apply in the instant case.

In *Appalachian,* the Third Circuit adopted the "manifestation" trigger of coverage rule in determining when the injurious effects of an insured's discriminatory employment practices took place. Relying on the peculiar nature of employment discrimination injuries and the difficulty in ascertaining when such injuries occur, the Third Circuit held that an "occurrence takes place when the injuries first manifest themselves." *Id.* at 62 (citing *Bartholomew v. Insurance Co. of N.A.,* 502 F.Supp. 246, 254 (D.R.I.1980), *aff'd sub nom. Bartholomew v. Appalachian Ins. Co.,* 655 F.2d 27 (1st Cir.1981)).

Until very recently, it appeared that *Appalachian's* "manifestation" rule for triggering insurance coverage was limited to employment discrimination cases and similar situations where it is difficult to establish when the injurious effects of accidents occur. *Appalachian,* 676 F.2d at 62–63; *see also Centennial Ins. Co. v. Lumbermens Mut. Cas. Co.,* 677 F.Supp. 342, 346–47 (E.D.Pa.1987) (distinguishing *Appalachian* on the grounds that the time of occurrence was easily identifiable).

The Third Circuit, however, has recently revisited the issue of when an occurrence takes place triggering insurance coverage. In doing so, the court stated that "[u]nder Pennsylvania law, the general rule is that a tort 'occurs' for insurance coverage purposes when the injuries caused by the tort first become apparent or manifest themselves." *City of Erie v. Guaranty Nat. Ins. Co.,* 109 F.3d 156 (3d Cir.1997). Thus, the Third Circuit's most recent decision instructs district courts applying Pennsylvania law to employ the "manifestation" trigger as the general rule in tort actions.

The Third Circuit explained in *City of Erie* that the "law of Pennsylvania on the timing of the 'occurrence' of a tort for insurance purposes is rooted in the decision of our court in *Appalachian." City of Erie,* 109 F.3d at 162. The court noted that Pennsylvania's intermediate appellate courts have adopted *Appalachian's* "manifestation" rule in other contexts in the fifteen years since *Appalachian* was decided. *Id.* at 162–63 (cit-

ing *Keystone Automated Equip. Co., Inc. v. Reliance Ins. Co.,* 369 Pa.Super. 472, 535 A.2d 648, 651 (1988); *D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857 (1986)). Therefore, according to the Third Circuit, the manifestation/discovery rule now serves as the generally applicable rule in Pennsylvania for determining when an occurrence takes place triggering insurance coverage under occurrence-type CGL policies.

The generally applicable manifestation rule, however, is not the only triggering theory adopted in Pennsylvania and the Third Circuit. In asbestos cases, for example, Pennsylvania law provides a "continuous trigger" or "triple trigger" theory where coverage is triggered continuously from first exposure through manifestation of asbestosis. *City of Erie,* 109 F.3d at 164 (citing *J.H. France Refractories Co. v. Allstate Ins. Co.,* 534 Pa. 29, 626 A.2d 502 (1993); *ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 764 F.2d 968 (3d Cir.1985) (applying Pennsylvania law)). Under this theory, bodily injury caused by asbestos occurs when a person is first exposed to asbestos, upon further progression of the disease, or upon manifestation of the disease. *J.H. France,* 626 A.2d at 507; *ACandS,* 764 F.2d at 973.

■ Quarry urges the Court to apply a triple trigger theory to the instant case. Quarry contends that the settlement of the foundation, like asbestosis, is an event that first occurred during the policy period but did not become apparent or discovered until after the policy expired. Despite any possible similarity between the two injuries, however, the triple trigger theory is inapplicable to this case. Under Pennsylvania law, the triple trigger theory is limited to asbestos injuries and other cases involving latent diseases because of the unique difficulty in determining when such injuries occur and because of the risk of insurers terminating coverage during the disease's latency period. *City of Erie,* 109 F.3d at 164–65; *Armotek Indus., Inc. v. Employers Ins. of Wausau,* 952 F.2d 756, 763 (3d Cir.1991) (applying Pennsylvania law). In contrast, the parties have stipulated in the present case that "the foundation system and piles in the rear of the building settled during the period November,

1985 through September 1, 1986 while the subject insurance policy was in effect." *See* Stipulation ¶ 33. Accordingly, the Court declines to adopt the triple trigger theory.

■ In addition to rejecting the triple trigger theory, the Court also finds that the unique facts of this case warrant departure from the generally applicable manifestation rule stated in *City of Erie*. Quarry and Marine have stipulated that the foundation settled during the period of November, 1985 through September 1, 1986. Thus, unlike in *City of Erie* and *Appalachian*, there is no dispute about when the injurious effects of the insured's actions took place. They occurred from November, 1985 through September 1, 1986, while the policy was in force. There can be no question that the effect of Brenneman's alleged negligence is that Quarry's foundation settled. Both parties have stipulated that this damage occurred while the insurance policy was in force. Therefore, the time of damage is easily ascertainable as having occurred during the policy period. Although Quarry neither discovered the foundation's settling nor completed construction of its building until after the policy had expired, it suffered actual property damage as soon as the foundation piles began to settle.

"Property damage" is clearly and unambiguously defined in the policy as "physical injury to or destruction of tangible property which occurs during the policy period." The foundation system is certainly tangible property that suffered damage, as the parties stipulate, within the policy period. This is a single "occurrence" permitting Quarry to recover, in the event Brenneman is found negligent in the state court action, any damages proximately caused by Brenneman's negligence which are not excluded from coverage by the policy's exclusions, as hereinafter discussed. As the Pennsylvania Supreme Court has explained:

> Being defined as one "occurrence," the entire injury, and all damages resulting therefrom, fall within the indemnification obligation of the insurer. In other words, once the liability of a given insurer is triggered, it is irrelevant that additional exposure or injury occurred at times other than when the insurer was on the risk. The insurer in question must bear potential liability for the entire claim.

*J.H. France,* 626 A.2d at 508 (quoted in *Koppers,* 98 F.3d at 1451). Of course, it is possible that Quarry's recovery from Brenneman might be reduced in the state court action by Quarry's own or by others' negligence in continuing to construct the building after discovering the foundation had settled.

For the foregoing reasons, this Court concludes that, in the event Brenneman is found negligent in the Delaware County Court of Common Pleas action captioned *Quarry Associates v. J.E. Brenneman Company* (Civil Action No. 88–13409), such finding of negligence sets forth an "occurrence" under Continental Policy No. L2927679 during the period the policy was in effect.

### B. *Exclusions from Coverage*

■ Having determined that an occurrence took place within the insurance policy period, the Court must next address whether any policy exclusions limit coverage. In counts six and seven of it declaratory judgment complaint, Marine contended that the "Broad Form Property Damage Endorsement," containing what are called the "work product" or "work performed" exclusions, excludes coverage for all of Quarry's damages. However, in its brief for summary judgment, Marine now claims that the Broad Form Property Damage Endorsement only excludes coverage for the costs of repairing or replacing the foundation piles installed by Brenneman. In its own brief for summary judgment, Quarry agrees with Marine's recent position that the policy exclusions only exclude coverage for damage to Brenneman's own work, and not for damage to work performed by other contractors resulting from Brenneman's alleged negligence.

The Court has reviewed all of the exclusions in the insurance policy at issue and has determined that only exclusions Y and Z of the Broad Form Property Damage Endorsement are applicable. Exclusion Y applies:

> to property damage ... [to] that particular part of any property, not on the premises owned by or rented to the insured ... the

restoration, repair, or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.

Exclusion Z applies:

with respect to the completed operations hazard and with respect to any classification stated below as 'including completed operations', to property damage to work performed by· the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

Exclusions Y & Z, Policy No. L2927679.

Most CGL policies contain these provisions excluding coverage for property damage to an insured's own work. See, *e.g.*, Hugh E. Reynolds & Patrick L. Dunn, "General Liability Coverage for Property Damage Due to a Contractor's Negligent Construction," 13 *Construction Lawyer* 1, 36–40 (Aug.1993); *see also* Grace A. Carter, "Building on a Solid Foundation: Construction Defect Coverage for Owners and Developers," 6 *Coverage* 1 (Jan./Feb.1996); Robert J. Franco, "Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies," 30 *Torts & Ins. L.J.* 785 (Spring 1995).

As Pennsylvania courts have explained, general liability policies do not serve as performance bonds covering faulty workmanship. Instead, the insured must "assume the risk of the quality of its product and its work." *Ryan Homes*, 647 A.2d at 942; *see also Carpenter v. Federal Ins. Co.*, 432 Pa.Super. 111, 637 A.2d 1008, 1014 (1994) (discussing purpose of similar exclusions).

CGL policies generally cover damages which are consequential and derive from an insured's work but do not cover damages to the insured's own work. This difference can best be explained by the theory underlying insurance coverage. Repair and replacement costs to an insured's own work are not covered by CGL policies because they are, to some degree, within the control of the insured. If these costs were covered, the insured would have less incentive to exercise care in the performance of its own work. Moreover, insurers can offer CGL insurance more cheaply by requiring the insured to cover the more frequent but much smaller costs of repairing or replacing its own work. See, *e.g.*, Robert J. Franco, "Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies," 30 *Torts & Ins. L.J.* 785, 787 (Spring 1995).

In the instant case, the Court agrees with both parties and concludes that Exclusions Y and Z exclude coverage for damage to the foundation piles supporting Quarry's building, since Brenneman installed these piles. The exclusions do not, however, exclude coverage for the consequential damages arising out of Brenneman's alleged negligence.

Accordingly, the Court concludes that the policy issued to Brenneman excludes coverage for damage to the foundation piles installed by Brenneman but not Quarry's consequential damages resulting from Brenneman's alleged negligence. Thus, in the event Brenneman is found negligent by the Delaware County Court of Common Pleas in the action captioned *Quarry Associates v. J.E. Brenneman Company* (Civil Action No. 88–13409), Quarry may recover for damages to its building proximately caused by Brenneman's negligence with the exception of costs for replacing or repairing the foundation piles.

## III. CONCLUSION

For the foregoing reasons, the Court finds that an "occurrence" took place under the terms of the CGL insurance policy issued by Continental and Marine to Brenneman, and that the policy's exclusions Y and Z partially limit coverage. The policy covers Quarry's alleged damages in its negligence action against Brenneman except for damages to the foundation piles installed by Brenneman. Thus, in the event Brenneman is found negligent for the 1985 installation of foundation piles underneath Quarry's building by the Delaware County Court of Common Pleas in the action captioned *Quarry Associates v. J.E. Brenneman Company* (Civil Action No. 88–13409), Continental Insurance Company, pursuant to its policy L2927679 issued to Brenneman, shall indemnify Brenneman for all property damage (not in excess of the policy limit of $1 million) awarded to Quarry

in said action proximately caused by Brenneman's negligence, excluding, however, damage to the foundation piles installed by Brenneman.

An appropriate Order follows.

### ORDER

**AND NOW**, this 12th day of May, 1997; Plaintiff and Defendant having each moved for declaratory judgment pursuant to cross motions for summary judgment; for the reasons set forth in this Court's Memorandum of this date;

**IT IS ORDERED**: Plaintiff's motion for summary judgment is *DENIED* and Defendant's cross-motion for summary judgment is *GRANTED;*

**IT IS FURTHER ORDERED:** Declaratory Judgment is entered and the Court declares: in the event J.E. Brenneman Company is found negligent for the 1985 installation of foundation piles at the property located at 740 South Chester Road, Swarthmore, Pennsylvania by the Court of Common Pleas of Delaware County in the action captioned *Quarry Associates v. J.E. Brenneman Company* (Civil Action No. 88–13409), Continental Insurance Company, pursuant to its policy number L2927679 issued to J.E. Brenneman Company, shall indemnify J.E. Brenneman Company for all property damage (not in excess of the policy limit of $1 million) awarded to Quarry Associates, Inc. in said action proximately caused by J.E. Brenneman Company's negligence, excluding, however, damage to the foundation piles installed by J.E. Brenneman Company.