PLASTICERT, INC., Appellant

v.

WESTFIELD INSURANCE COMPANY, et al., Appellee

Plasticert, Inc., Appellee

v.

Westfield Insurance Company, et al., Appellant.

Superior Court of Pennsylvania.

Argued Nov. 28, 2006.
Filed May 1, 2007.

Steven E. Grubb, Harrisburg, for Plasticert.

Allan C. Molotsky, Philadelphia, for Westfield.

BEFORE: FORD ELLIOTT, P.J., LALLY–GREEN, and JOHNSON, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant/Cross–Appellee Plasticert, Inc., and Appellee/Cross–Appellant Westfield Insurance Company, appeal from the trial court's order of February 22, 2006. We affirm.

¶ 2 On July 12, 2004, Plasticert filed a declaratory judgment action against Westfield, its insurer, to determine coverage under a Commercial General Liability policy and an Umbrella Insurance policy. The coverage dispute stems from an underlying contract action filed against Plasticert by one of its customers, Westfalia Technologies, Inc. Westfield denied coverage under

the policies, and the trial court determined that the policies exclude coverage for the underlying lawsuit. The trial court found the following facts:

The pleadings of this case and the underlying action indicate that, after a lengthy period of testing and tooling production, Plasticert began making thermoplastic wheels for use in Westfalia's new gravity flow product line on April 6, 2000. As part of the agreement with Plasticert, Westfalia required Plasticert to use Stanuloy ST–150 or an equivalent material in manufacturing the wheels. Westfalia purchased Plasticert's wheels until the end of 2002.

Beginning in March of 2003, Westfalia received complaints from several gravity flow purchasers who claimed that the wheels were breaking, cracking, and shattering. Westfalia conducted destructive testing on field samples of the wheels which confirmed the complaints. During this testing period, Westfalia noticed that the Plasticert wheel containers wore labels reading "Ashley Polymers Ashlene R6714." Westfalia replaced several of Plasticert's thermoplastic wheels with wheels obtained from undisclosed sources. By letter dated January 23, 2004, Westfalia's counsel informed Plasticert that his client suffered damages due to Plasticert's "nonconforming wheels."

Westfalia filed suit against Plasticert on March 26, 2004. The Amended Complaint contains the following counts: Count I—Breach of Contract; Count II—Rejection/Revocation; Count III—Breach of Express Warranty; Count IV—Breach of Implied Warranties; Count V—Common Law Fraud; Count VI—Fraud in the Inducement; Count VII—Promissory Estoppel; and Count VIII—Unjust Enrichment. Plasticert joined Ashley Polymers as a defendant on June 18, 2004.

On November 1, 2002, Westfield insured Plasticert via a Commercial General Liability (hereinafter "CGL") policy and a Commercial Umbrella (hereinafter "Umbrella") policy, the terms of which will be addressed in detail below. In anticipation of Westfalia's suit being filed, Plasticert contacted Westfield to put them on notice of their duty to defend. Westfield denied coverage via letter on May 3, 2004. After Plasticert asked Westfield to reconsider, Westfield again denied coverage.

Plasticert initiated this action via Complaint on July 12, 2004. An Amended Complaint was filed on the 30th, which seeks declaratory judgment on three issues: (1) that Westfield must defend Plasticert in the underlying action until the facts reveal that the policies do not apply; (2) that the allegations are, in fact, covered by either or both policies; and (3) that Westfield has a duty to indemnify Plasticert for "any verdict, judgment or settlement in the underlying lawsuit."

. . .

This case has been stayed since June 30, 2005, pursuant to a suggestion of bankruptcy filed by Plasticert on June 30, 2005. The parties have indicated, via letter from Westfield's counsel dated January 26, 2006, that they have agreed to lift the stay for the sole purpose of deciding the dueling motions for judgment on the pleadings [in this action].

Trial Court Opinion, 2/22/06, at 1–4 (record citations omitted).

¶ 3 On February 22, 2006, the trial court granted Westfield's motion for judgment on the pleadings and denied a similar motion from Plasticert. The trial court found that the sistership exclusion, which is contained in substantially similar language in

both polices, barred coverage with respect to the underlying lawsuit. Plasticert filed a timely notice of appeal on March 22, 2006. On March 23, 2006, the trial court ordered Plasticert to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Plasticert filed a timely concise statement on April 5, 2006.

¶ 4 Westfield filed a notice of cross-appeal on April 4, 2006. On April 7, the trial court ordered Westfield to file a 1925(b) concise statement within 14 days and properly served that order on Westfield. Westfield filed an untimely concise statement on April 26. Westfield's failure to comply with the trial court's 1925(b) order results in waiver of Westfield's cross-appeal. *Karn v. Quick & Reilly*, 912 A.2d 329 (Pa.Super.2006).

¶ 5 We note, however, that the issues Westfield raises in its brief simply offer alternative bases on which we may affirm the trial court. Westfield correctly notes that we may affirm the trial court's order on any valid basis. *Craley v. State Farm & Cas. Co.*, 586 Pa. 484, 895 A.2d 530, 532–533 (2006). Westfield's waiver of its cross-appeal does not preclude this Court from reviewing alternative bases on which to affirm the trial court's order. Indeed, a cross-appeal was unnecessary because Westfield won a complete victory before the trial court. Westfield could have avoided much hassle by simply filing an appellee's brief. We now turn our attention to the merits.

¶ 6 Plasticert raises the following issue for our review:

Did the lower court commit an error of law in applying the "Sistership Exclusion" contained in [the] Commercial General Liability and Umbrella Insurance policies, thus denying Appellant insurance coverage and legal defense costs in a related claim?

Plasticert's Brief at 3.[1]

¶ 7 We review the trial court's grant of judgment on the pleadings according to the following standard:

Our scope and standard of review in an appeal of an order granting a motion for judgment on the pleadings is well settled: this Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. We must determine whether the trial court's action respecting the motion for judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. We will affirm the grant of judgment on the pleadings only if the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise.

*DeSantis v. Prothero*, 2007 PA Super 9 at ¶ 5, 916 A.2d 671.

¶ 8 We interpret the terms of an insurance policy according to the following standard:

The interpretation of an insurance policy is a question of law that we will review *de novo*. Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms. When the language of the policy is clear and unambiguous, [we must] give effect to that language. Alternatively, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as

1. Plasticert included this issue in its 1925(b) statement.

the insurer drafts the policy, and controls coverage.

*Kvaerner Metals v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888, 897 (2006).

¶ 9 The CGL and umbrella policies at issue contain several similarly worded exclusions that potentially bar coverage with regard to the underlying lawsuit. The parties concede that the outcome of the instant matter will be the same under both policies. Coverage may be triggered under either policy in the event of an "occurrence" that results in "property damage." "Occurrence" and "property damage" are defined terms in both polices. The trial court concluded that the facts alleged in the underlying lawsuit are sufficient to meet the definition of "occurrence" and "property damage." The trial court nonetheless found that exclusion "n" barred coverage in the instant matter, and therefore granted judgment on the pleadings in favor of Westfield.

¶ 10 Westfield argues that the trial court erred in finding that the facts alleged in the underlying lawsuit constitute an "occurrence" that resulted in "property damage." Westfield argues in the alternative that the trial court correctly found that exclusion "n" applies. Finally, Westfield argues that several exclusions not addressed by the trial court also bar coverage with respect to the underlying lawsuit. Plasticert argues the contrary on each of these points.

¶ 11 For purposes of this appeal, we will assume without deciding that the facts alleged in the underlying lawsuit constitute an "occurrence" that resulted in "property damage." We first turn our attention to exclusion "k", commonly known as the business risk exclusion, which we conclude is dispositive.

¶ 12 Exclusion "k" in the CGL policy provides as follows:

**k. Damage To Your Product**

"property damage" to "your product" arising out of it or any part of it.

CGL Policy at 5.[2]

¶ 13 This Court addressed similar policy language in *Ryan Homes, Inc. v. The Home Indem. Co.,* 436 Pa.Super. 342, 647 A.2d 939 (1994), *appeal denied,* 540 Pa. 621, 657 A.2d 491 (Pa.1995). In that case, Ryan Homes sought coverage under its various CGL policies for the expense of replacing roofs on a number of homes due to incorporation of defective products from one of Ryan Homes' subcontractors. The polices each contained an exclusion barring coverage for damage to the insured's product. *Id.* at 941. We quoted from the trial court's opinion as follows:

The plain meaning of the language of this exclusion is simply that if the insured should become liable for property damage caused by an accident to work performed by or on behalf of the insured which accident arises out of the work or any portion thereof, the cost of replacement or repair of that work will not be covered.

*Id.*

¶ 14 After a review of case law from this and other jurisdictions, we concluded that CGL policies are designed to provide coverage where a defect in the insured's work causes personal injury or damage to the property of a third party:

Regardless of the underlying cause of action against the insured, [the exclusions] eliminate coverage for property damage caused by the lack of quality or performance of the insured's products and for any repair or replacement of the faulty work performed by or on behalf of

**2.** The umbrella policy contains a substantially    similar provision.

the insured. [The exclusions] unquestionably exclude coverage for the business risk incurred by the insured. As observed by the Supreme Court of Indiana [:]

What is covered by the policy is defective workmanship which causes personal injury or property damage not excluded under some provision of the policy. So if the insured's breach of an implied warranty results in damage to property other than the insured's work or product which is excluded by exceptions ..., the policy would provide coverage. To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for the repair or replacement of the insured's own faulty workmanship.

*Id.*, quoting *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 378 (Okla.1991); *see also Pennsylvania Mfrs. Assoc. Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1181 (Pa.Super.2003) ("Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims.")

¶ 15 We concluded in *Ryan Homes* that the insured was not entitled to coverage for the cost of repairing and replacing its customers' roofs. This was so even though a subcontractor apparently provided the defective component. A contrary holding would place the insurer "on the hook" for the general contractor's failure to ensure successful performance of the contract. *Ryan Homes*, 647 A.2d at 943.

¶ 16 In the instant matter, the underlying complaint alleges simply that Plasticert's wheels failed to perform to specifications. That is, they consistently shattered under normal use. The complaint does not allege that the failure of the wheels resulted in personal injury or damage to any property other than the wheels themselves. As was the case in *Ryan Homes*, the business risk exclusion bars coverage for Plasticert's failure to deliver wheels that conformed to contract specifications. That Plasticert obtained the apparently defective component from another company does not change the result. Plasticert had a contractual obligation to deliver wheels that conformed to Westfalia's specifications. Per *Ryan Homes*, Plasticert cannot turn to Westfield for coverage of Plasticert's failure to ensure that a component part of its wheels met Westfalia's terms.

¶ 17 Plasticert seeks to avoid this result by arguing that the allegations in Westfalia's complaint do not trigger exclusion "k" because Westfalia does not allege damage to "your product" as defined in the policy. Plasticert's argument ignores the facts. The Westfalia complaint alleges that Plasticert's wheels were a component of its gravity flow product line, and that Plasticert's wheels failed to perform as warranted. Westfalia does not allege damage to any other portion of its gravity flow product, nor does it allege that anything other than Plasticert's wheels needed to be replaced.[3]

¶ 18 Since exclusion "k" clearly precludes coverage of the underlying lawsuit,

**3.** Moreover, Plasticert's reliance on *Carpenter v. Fed. Ins. Co.*, 432 Pa.Super. 111, 637 A.2d 1008 (1994), *appeal dismissed*, 544 Pa. 485, 677 A.2d 836 (1996), is misplaced. *Carpenter* involved a provision different in substance than exclusion "k." The provision at issue in *Carpenter* excluded coverage for work performed by the insured. Exclusion "k" bars coverage for the insured's product. The thermoplastic wheels at issue in the instant matter are clearly Plasticert's product, as defined in the policy. While the wheels incorporate a substance manufactured by another company, Plasticert was contractually obligated to ensure that that substance met Westfalia's express specifications.

we affirm the trial court's order granting judgment on the pleadings in favor of Westfield. In light of our disposition, we do not address the parties' remaining arguments.

¶ 19 Order affirmed.