J-A09003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MOUNTAINEER NATURAL GAS COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENNETH R. MINER AND CHERYL D. MINER, HUSBAND AND WIFE, AND JOYCE MURPHEY | : | |
| | : | |
| APPEAL OF: JOYCE MURPHEY | : | No. 777 WDA 2017 |

Appeal from the Order Entered April 28, 2017
In the Court of Common Pleas of Greene County Civil Division at No(s):
AD-788-2016

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 22, 2018**

Joyce Murphey appeals from the order that granted judgment on the pleadings and quieted title in favor of Mountaineer Natural Gas Company ("Mountaineer") in this case involving the oil, gas, and mineral rights to a fifty-acre parcel of land situated in Richhill Township, Greene County ("the Property").  We affirm.

The history of the case as gleaned from the record is as follows.  In August 2012, Ms. Murphey entered into an agreement to sell the Property to Kenneth Miner, and conveyed all of her interests in the Property to him by deed dated and recorded in September 2013.  On June 3, 2014, Mountaineer acquired the Property from Kenneth and Cheryl Miner ("the Miners,"

collectively)[1] by general warranty deed which was recorded on June 20, 2014. Complaint, 10/7/16, at ¶ 10-11.  However, after the Miner-Mountaineer deed was executed, but before it was recorded, Ms. Murphey and Mr. Miner executed a document bearing the title "Amending Agreement."  *Id*. at ¶ 13. The agreement, dated June 5, 2014, and recorded June 12, 2014, indicates that Ms. Murphey sold the Property to the Miners by contract of August 4, 2012, and that the parties wished to amend that contract as follows:

> THE ABOVE DEED AND CONTRACT SHOULD NOT SHOW THE MINERAL AND/OR GAS RIGHTS BEING TRANSFERRED WITH THIS AGREEMENT.  JOYCE MURPHY [sic] INTENDED TO KEEP SAID RIGHTS TO THE MINERALS AND/OR GAS UNDER THIS PROPERTY AND KENNETH MINER AGREES TO THAT PROVISION.  NOTHING IN THIS AGREEMENT, THAN [sic] AND NOW, SHOULD CHANGE THIS INTENT.  JOYCE MURPHY [sic] KEEPS ALL MINERAL AND/OR GAS RIGHTS.

*Id*. at ¶ 14, Exhibit 2.

After the Miner-Mountaineer deed was recorded, Ms. Murphey and Mr. Miner executed another "Amending Agreement," dated October 8, 2014, and recorded October 16, 2014, purporting to make the following amendment to the August 4, 2012 contract for the sale of the Property.

> THE ABOVE DEED AND CONTRACT SHOULD NOT SHOW THE GAS, OIL, AND/OR ANY MINERAL RIGHTS AT ALL BEING TRANSFERRED WITH THIS AGREEMENT.  JOYCE MURPHEY INTENDED TO KEEP SAID RIGHTS TO THE GAS, OIL, AND/OR ANY MINERAL RIGHTS UNDER THIS PROPERTY AND KENNETH MINER AGREES TO THAT PROVISION.  NOTHING IN THIS AGREEMENT, THEN AND NOW SHOULD CHANGE THIS INTENT.  JOYCE MURPHEY KEEPS ALL THE GAS, OIL, AND ALL OTHER MINERAL RIGHTS.

---

[1] The Miners have not participated in this appeal.

*Id*. at ¶¶ 16-18, Exhibit 3.

With the Agreements clouding the title, Mountaineer was unable to enter oil and gas leases for the Property. *Id*. at ¶ 19. Mountaineer contacted the Miners regarding the issue, but the Miners "declined to cure the title defects." *Id*. at ¶ 19-20. Instead, the Miners filed a complaint against Mountaineer in Mercer County alleging, *inter alia*, that Mountaineer breached the contract for the purchase of the Property by failing to pay the balance owed. *Id*. at ¶ 22, Exhibit 4. As a result, on October 7, 2016, Mountaineer filed a complaint against the Miners and Ms. Murphey stating counts of quiet title, breach of contract/warranty, and declaratory judgment.

In their answers to the complaint, Ms. Murphey and the Miners offer a different version of events. They indicate that Ms. Murphey never sold the oil and gas rights to the Property to the Miners. Answer (Miners), 1/9/17, at ¶ 14; Answer (Murphey), 12/1/16, at ¶ 5. They further claim that Mountaineer was fully aware that it was not receiving the oil and gas rights as part of its acquisition of Property. Answer (Miners), 1/9/17, at ¶ 9. The Miners deny having executed a deed on June 3, 2014, as alleged by Mountaineer. *Id*. at ¶ 10. Rather, they contend, Mountaineer presented a deed to them on that date which included oil and gas, but they refused to execute it, reminding Mountaineer that they did not own the gas and mineral rights, and returned the hand money. *Id*. Later, Mountaineer presented the Miners with an

amended deed that omitted the language regarding oil and gas rights, which the Miners then executed. *Id*.

Thus, the Miners asserted, the Amending Agreements were executed to clarify that Ms. Murphey had retained the oil and gas rights when she sold them the Property. They averred that Ms. Murphey's reservation of the oil and gas rights "had been inadvertently omitted from the deed of conveyance." *Id*. at ¶ 14. Ms. Murphey contended that the Amendments were executed out of concern that the previously-recorded documents "insufficiently gave notice" of her reservation of the oil and gas rights. Answer (Murphey), 12/1/16, at ¶ 5.

The Miners professed that Mountaineer never communicated with them regarding any cloud on the title to Property or asked them to cure any title defects, because there are no defects. Answer (Miners), 1/9/17, at ¶ 20-21. They asserted that Mountaineer knew that the oil and gas rights were not part of the deal for the Property, and that Mountaineer acknowledged prior to purchasing it that it was not acquiring oil and gas rights. *Id*. at ¶ 20.

After the close of pleadings, Mountaineer filed a motion for judgment on the pleadings as to all three counts. Mountaineer therein claimed that the pleadings establish that (1) Mountaineer has title to the oil and gas under the Property; (2) the Miners failed to cure title defects and defend title as required by the covenants of the general warranty deed, entitling Mountaineer to damages and attorneys' fees; and (3) Mountaineer is entitled to a declaration

that the two Amendments executed after the Property was deeded to it are void *ab initio*. Motion for Judgment on the Pleadings, 2/8/17, at 6-7.

Following briefing by the parties, the trial court entered an order granting Mountaineer's motion. The order established that the deed transferring the Property from the Miners to Mountaineer "was executed, notarized, and delivery was intended on June 3, 2014. Ownership was effectively transferred on June 3, 2014." Order, 4/28/17, at unnumbered 2. The order further declared that Mountaineer was a bona fide purchaser, there was no mutual mistake, the Amending Agreements were void *ab initio*, and that, "[a]s to [the Miners and Ms. Murphey], title to [the Property] is fully seized in [Mountaineer], specifically including the oil, natural gas, and hydrocarbons." ***Id***. Therefore, title was quieted in Mountaineer. ***Id***.

Ms. Murphey filed a timely notice of appeal from the order, and both she and the trial court complied with Pa.R.A.P. 1925. Before we consider the substance of the issues Ms. Murphey raises on appeal, we must determine whether we have jurisdiction to do so, as Mountaineer contends that we do not. Mountaineer's brief at 8-11.

"As a general rule, this Court has jurisdiction only over appeals taken from final orders." ***Angelichio v. Myers***, 110 A.3d 1046, 1048 (Pa.Super. 2015). Final orders are those that dispose of all claims and all parties, Pa.R.A.P. 341(b)(1), or that are entered as final orders upon the trial court's timely certification that an immediate appeal will facilitate resolution of the

entire case. Pa.R.A.P. 341(b), (c). As indicated above, Mountaineer's complaint included three counts: (1) quiet title, (2) breach of contract/warranty, and (3) declaratory judgment. Although the trial court's April 28, 2017 order adjudicated Mountaineer's claims for declaratory judgment and quiet title, both of the parties note that the order did not resolve Mountaineer's contract claim against the Miners by either dismissing it or awarding Mountaineer damages. Murphey's brief at 9 n.1; Mountaineer's brief at 8. Further, the trial court did not certify its order as a final order pursuant to Pa.R.A.P. 341(c). Therefore, in order for this appeal to be properly before us, a basis other than finality must establish our jurisdiction.[2]

Ms. Murphey argues that the order is an interlocutory order appealable as of right pursuant to Pa.R.A.P. 311(a)(8) and the Declaratory Judgments Act. Murphey's reply brief at 3. Rule 311 provides that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of

_____

[2] Although Ms. Murphey acknowledged that the trial court did not rule upon Mountaineer's contract claim against the Miners, she nonetheless argues that the appealed-from order did dispose of all claims because Mountaineer's contract claim was pled in the alternative to its quiet title action. Murphey's reply brief at 1-2. Mountaineer's contract claim does allege that the Miners breached certain covenants of the general warranty deed "to the extent Amendment No. 1 and/or Amendment No. 2 are valid." Complaint, at ¶ 35. However, the claim is also based upon, *inter alia*, the Miners' filing of the Mercer County lawsuit against Mountaineer. *Id*. at ¶ 37. As such, the trial court's declaration that the Amendments were void *ab initio* did not dispose of Mountaineer's contract claim in its entirety.

all parties." Pa.R.A.P. 311(a)(8). The Declaratory Judgments Act includes the following provision.

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and **such declarations shall have the force and effect of a final judgment or decree**.

42 Pa.C.S. § 7532 (emphasis added).

In order to determine whether Ms. Murphey's position is correct, we must examine the evolution of Pennsylvania law regarding the appealability of declaratory judgment orders. Rule 341, regarding final orders, previously provided among its definitions "any order that . . . is expressly defined as a final order by statute[.]" Pa.R.A.P. 341(b)(2). As quoted above, § 7532 of the Declaratory Judgments Act provides that orders declaring rights "shall have the force and effect of a final judgment." Accordingly, appeals from declaratory judgment orders were, arguably, immediately appealable under Rule 341(b)(2) even if the orders did not dispose of all claims and all parties.

Subsection (b)(2) was rescinded in 2015. Pa.R.A.P. 341, *Note*. The official note to the Rule offers the following explanation as it relates to declaratory judgment orders.

> One of the . . . effects of the rescission of subparagraph (b)(2) is to change the basis for appealability of orders that do not end the case but grant or deny a declaratory judgment. *See **Nationwide Mut. Ins. Co. v. Wickett**, 763 A.2d 813, 818 (Pa. 2000); **Pa. Bankers Ass'n v. Pa. Dep't. of Banking**, 948 A.2d 790, 798*

- 7 -

(Pa. 2008). The effect of the rescission is to eliminate waiver for failure to take an immediate appeal from such an order. A party aggrieved by an interlocutory order granting or denying a declaratory judgment, where the order satisfies the criteria for "finality" under *Pennsylvania Bankers Association*, may elect to proceed under Pa.R.A.P 311(a)(8) or wait until the end of the case and proceed under subparagraph (b)(1) of this rule.

*Id*.

In *Wickett*, *supra* at 815, plaintiffs injured in an automobile accident while acting within the scope of their employment sued a number of defendants seeking, *inter alia*, a declaration that the Worker's Compensation Act ("WCA") did not prevent them from recovering underinsured motorist benefits from their employer's insurance company, Huron. The trial court sustained the preliminary objections filed by three of the defendants on the basis that the WCA provided the exclusive remedy, and dismissed those defendants from the pending action. On appeal, this Court affirmed.

Our Supreme Court considered whether the orders sustaining the preliminary objections were final and immediately appealable. Citing § 7532 of the Declaratory Judgments Act, the Court indicated that "there can be no disputing" that the section "defines any order in a declaratory judgment action that either affirmatively or negatively declares 'rights, status, and other legal relations' as a final order." *Id*. at 817. The Court further held that the orders "did in fact affirmatively or negatively declare the rights of the parties," explaining as follows.

By granting the preliminary objections, the trial court essentially concluded that there was no legal basis upon which [the plaintiffs]

- 8 -

could recover underinsured motorist benefits from Huron. In so doing, the trial court effectively declared the legal rights of the parties, notwithstanding [the plaintiffs'] assertions to the contrary.

*Id*. at 817-18. Therefore, the trial court's orders were immediately appealable pursuant to Rule 341(b)(2) and § 7532.

In *Pennsylvania Bankers Association*, *supra* at 794, a group of banks ("the Banks") filed declaratory judgment claims, alleging that amendments to the Credit Union Code gave credit unions an unfair competitive advantage. The Banks claimed that two sections of the statute (§§ 501 and 517) were unconstitutional under various provisions of the Pennsylvania and United States constitutions. *Id*. The Commonwealth Court overruled preliminary objections as to certain claims, but sustained preliminary objections as to claims under Article VIII, §§ 2 and 5 of the Pennsylvania constitution. *Id*. The Banks immediately appealed, and our Supreme Court considered whether the order dismissing some, but not all, of the Banks' claims was appealable.

The Banks argued that the order was immediately appealable because it declared that there was no legal basis for the Banks' claims under sections 2 and 5 of Article VIII. Thus, the Banks contended, the order was a final order as defined by § 7532 of the Declaratory Judgments Act. Our Supreme Court disagreed, holding that the order was neither final nor appealable, because the Banks "might still be able to obtain the relief they are seeking—*i.e.* a declaration that § 517 of the Credit Union Code is unconstitutional—based on

one of their alternative theories pending before the Commonwealth Court[.]"

*Id*. at 798. Consequently, "the order dismissing their challenge under §§ 2 and 5 had no practical effect upon the ultimate decision in this case." *Id*. The Court rejected the Banks' argument that the order was appealable under *Wickett*, explaining as follows.

> We find *Wickett* distinguishable, however, for the following reasons. In *Wickett*, the trial court's order put certain defendants out of court by dismissing all of the plaintiff's claims against them. In so doing, the order prevented the plaintiffs from obtaining any relief against these parties. It would therefore be appropriate in this context to characterize the trial court's order as a final order under 42 Pa.C.S. § 7532 because it, in essence, declared that the plaintiffs did not have any viable theory of recovery against such defendants.
>
> In contrast, as we emphasized earlier in this opinion, the Commonwealth Court's order in this case did not dismiss any party, but merely narrowed the scope of the Banks' declaratory judgment action, which raised alternative theories of relief. Because the Banks might still obtain the relief they are seeking based on one of their remaining constitutional theories, the Commonwealth Court's order sustaining the Appellees' preliminary objections has no certain effect upon the ultimate relief to which the Banks may be entitled. Thus, we find that the Commonwealth Court's order in this case did not declare the parties' rights within the meaning of 42 Pa.C.S. § 7532, and therefore, it is not a final order under *Wickett*.

*Id*. at 799 (footnotes omitted).

Applying the above law to the instant case, we conclude that Ms. Murphey properly appealed the trial court's April 28, 2017 order under Rule 311(a)(8) and § 7532. Contrary to Mountaineer's argument on appeal, it is of no moment that the trial court "did not make any mention of the Declaratory Judgment[s] Act" in entering its order. Mountaineer's brief at 10.

Mountaineer's complaint included a count seeking a declaratory judgment, and the order at issue made declarations that the two Amendments were void *ab initio*, and that, vis-à-vis Ms. Murphey, Mountaineer is fully seized in the oil, gas, and mineral rights to the Property. The orders thus effectively declared that Ms. Murphey has no rights to the Property, and left no claims pending by which she could obtain relief. Thus, at least as to Ms. Murphey, "the order satisfies the criteria for 'finality' under **Pennsylvania Bankers Association**." Pa.R.A.P. 341, *Note*. Accordingly, we have jurisdiction to adjudicate the merits of Ms. Murphey's appeal.

Ms. Murphey presents the following questions for this Court's consideration.

1. Whether the trial court erred as a matter of law in concluding that Mountaineer was a bona fide purchaser when there existed a disputed question of material fact bearing on the question of whether it had constructive notice of [Ms.] Murphey's claim to the gas and mineral rights.

2. Whether the trial court erred as a matter of law in concluding that Mountaineer was a bona fide purchaser when the pleadings establish that it had actual notice of [Ms.] Murphey's claim to the oil, gas and mineral rights.

Murphey's brief at 6.

The following legal principles govern our review.

Our scope of review on an appeal from the grant of judgment on the pleadings is plenary. Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings.

- 11 -

A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. On appeal, we accept as true all well-pleaded allegations in the complaint.

On appeal, our task is to determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury.

Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Altoona Reg'l Health Sys. v. Schutt*, 100 A.3d 260, 265 (Pa.Super. 2014) (citations and quotation marks omitted).

Based upon the pleadings in the instant case, the trial court determined that Mountaineer, not Ms. Murphey, owns the rights to the oil, gas, and minerals underlying the Property. In evaluating the propriety of that determination, we begin with a review of the applicable substantive law. "[A] conveyance of real property by way of deed is presumptively valid and will not be set aside unless it is shown by clear and convincing evidence that the transfer was improperly induced by fraud or other misconduct on the part of the transferee or that the deed was ineffective to pass title, as, for example,

where the deed was not delivered." ***Wagner v. Wagner***, 353 A.2d 819, 823-24 (Pa. 1976). Land is conveyed from one party to another by deed or other instrument of conveyance, not by the agreement of sale. "The word 'deed' denotes an instrument in writing, signed, sealed, and delivered by the grantor whereby an interest in realty is transferred from the grantor to the grantee." ***Mountain Properties, Inc. v. Tyler Hill Realty Corp.***, 767 A.2d 1096, 1099 (Pa.Super. 2001). An agreement of sale, on the other hand, "is an undertaking to execute and deliver an instrument of conveyance and the latter is something separate and apart from the agreement of sale itself." ***Smith v. Messner***, 92 A.2d 417, 418 (Pa. 1952). An agreement is not an instrument of conveyance if it "contemplate[s] that other things should be done before title should pass." ***In re Allshouse's Estate***, 156 A. 69, 72 (Pa. 1931).

Where more than one party claims title to the same land, a quiet title action may be used to resolve the matter. As this Court recently explained,

> The purpose of a quiet title action is to settle competing claims to interests in property or to determine right or title or the validity of any deed affecting any interest in land. Quiet title actions can be used to determine the respective interests of different parties claiming an interest in oil and gas rights, and these actions have become more common in this Commonwealth as landowners seek to enter into gas leases.

***Cornwall Mountain Investments, L.P. v. Thomas E. Proctor Heirs Tr.***, 158 A.3d 148, 160 (Pa.Super. 2017).

"Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support."

*Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa.Super. 2005).

"Normally, the owner of the surface estate is also the owner of the mineral rights unless the mineral rights are severed from the ownership of the surface land by grant or exception." *Sedat, Inc. v. Fisher*, 617 A.2d 1, 2 (Pa. Super. 1992) (citing *Pennsylvania Bank & Trust Co. v. Dickey*, 335 A.2d 483 (Pa.Super. 1975)). A deed conveying land without any reservation or exception conveys all interests held by the grantor. 21 P.S. § 3 ("All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, unless an exception or reservation be made therein, shall be construed to include all the estate, right, title, interest, property, claim, and demand whatsoever, of the grantor or grantors, in law, equity, or otherwise howsoever, of, in, and to the same, and every part thereof . . . .")

We now apply the above legal principles to the deeds at issue in the instant case. The 2013 deed by which Ms. Murphey conveyed the Property to Mr. Miner not only contained no exceptions or reservations, but expressly included previously-recorded coal and natural gas rights. Motion for Judgment on the Pleadings, 2/8/17, at Exhibit 1.[3] Moreover, the realty transfer tax

_____

[3] Although the Murphey-Miner deed was not attached to the pleadings, it is a public record that was referenced therein, and thus was properly considered by the trial court in ruling on the motion. *Bykowski v. Chesed, Co.*, 625 A.2d 1256, 1258 n.1 (Pa.Super. 1993) (noting that a court has the right to take judicial notice of public documents in ruling upon a motion for judgment on the pleadings).

statement recorded with the Murphey-Miner deed indicated that Ms. Murphey conveyed one hundred percent of her interest in the Property to the Miners. *Id*. The 2014 deed by which the Miners conveyed the Property to Mountaineer provided that they granted to Mountaineer all of the real property that Ms. Murphey had conveyed to Mr. Miner in 2013, and contained no reservation or exception of any oil, gas, or mineral rights. Complaint, 10/7/2016, at Exhibit 1. Thus, from the face of the deeds, it appears that Mountaineer acquired from the Miners all of Ms. Murphey's rights to the Property.

Nevertheless, Ms. Murphey contends that the trial court erred in quieting title in favor of Mountaineer upon these deeds. Ms. Murphey contends that a factual question exists as to when the Miner-Mountaineer deed was actually executed and delivered. She argues that, viewing the pleadings in the light most favorable to her as a non-moving party, the first Amending Agreement that she and Mr. Miner executed predated Mountaineer's acquisition of the Property. Therefore, she argues, Mountaineer was put on notice prior to the Property's conveyance to Mountaineer that there was a competing claim for the gas and mineral rights to the Property. Murphey's brief at 13.

Ms. Murphey's arguments are based upon the trial court's ruling that Mountaineer was a bona fide purchaser for value, and that the Property was conveyed from the Miners to Mountaineer on June 3, 2014, prior to either of the Murphey-Miner Amending Agreements. Order, 4/28/17, at unnumbered 2.-3. However, we conclude that the precise date of the conveyance of the

property from the Miners to Mountaineer is of no import, as, regardless of when the Amending Agreements were executed by Ms. Murphey and Mr. Miner, they had no impact of the ownership of the Property.[4]

Both of the Amending Agreements purported to clarify the August 4, 2012 contract of sale between Ms. Murphey and Mr. Miner, not the September 6, 2013 deed by which she conveyed the Property to Mr. Miner. **See** Complaint, 10/7/16, at Exhibits 2 and 3. The 2012 contract, entitled "Articles of Agreement for Deed," was not itself an instrument of conveyance, as it contemplated additional things to be done before Ms. Murphey would convey the Property to Mr. Miner. **See** Motion for Judgment on the Pleadings, 2/8/17, at Exhibit 2 ("[I]f Contract purchasers shall first make the payments . . . Contract Seller hereby covenants and agrees to convey . . . ."). Hence, notwithstanding any amendment to the contract, the September 2013 Murphey-Miner deed, which was the actual instrument of conveyance, conveyed all of Ms. Murphey's interest in the Property to Mr. Miner as discussed above.

In order to convey the oil, gas, and mineral rights back to Ms. Murphey, if they had been erroneously conveyed to Mr. Miner in the September 2013 deed, what was required was a new **deed** from Mr. Miner to Ms. Murphey,

---

[4] "[W]e may affirm the trial court's order on any valid basis." **Plasticert, Inc. v. Westfield Ins. Co.**, 923 A.2d 489, 492 (Pa.Super. 2007) (affirming grant of judgment on the pleadings on a basis other than that applied by the trial court).

complying with all of the requirements for the conveyance of real property. The pleadings contain no suggestion that any such deed exists.

Accordingly, whether the Amending Agreements were signed and recorded before or after the Miners conveyed the Property to Mountaineer by executing the deed dated June 3, 2014, they had no impact on Mountaineer's title to the oil, gas, and mineral rights associated with the Property. The trial court, therefore, did not err in holding that the Amending Agreements were void *ab intitio*. ***See Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.***, 602 A.2d 1348, 1354 (Pa.Super. 1992) (holding that post-conveyance document seeking to correct error in amount of land conveyed by deed was a nullity, as the erroneously-transferred land "could not be surrendered or reconveyed to the grantor except by deed, in writing, signed by the party surrendering or granting the same").

Thus, it is clear from pleadings and relevant documents that Mountaineer was entitled to quieted title in the Property, including all the subsurface oil, gas, and mineral rights that Ms. Murphey had previously owned.[5]

Order affirmed.

_____

[5] Upon return of the record to the trial court Mountaineer may, if it wishes, pursue its contract claims against the Miners.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/22/2018</u>