J-A20018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DYNAMIC HEALTHCARE SERVICES, INC., AND HOMETOWN OXYGEN, PITTSBURGH, LLC | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PHILIPS MEDICAL CAPITAL, LLC, DE LAGE LANDEN FINANCIAL SERVICES, INC., AND PHILIPS RS NORTH AMERICA, LLC F/K/A RESPIRONICS, INC. | : : : : : : : : | No. 331 EDA 2025 |
| APPEAL OF: PHILIPS RS NORTH AMERICA, LLC | : : | |

Appeal from the Order Entered December 27, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2024-04170-TT

BEFORE:   MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED DECEMBER 1, 2025**

Philips RS North America, LLC ("Philips RS") appeals from the order overruling its preliminary objections seeking to compel arbitration of certain tort claims. It maintains that it had a binding arbitration agreement with Dynamic Healthcare Services, Inc. ("DHS") and Hometown Oxygen, Pittsburgh, LLC ("HOP"), and that the challenged counts of DHS and HOP's Complaint fall within the scope of that agreement. We affirm.

The trial court summarized the facts as follows.

_____

[*] Retired Senior Judge assigned to the Superior Court.

This action is related to the case captioned ***Philips Medical Center, LLC v. Dynamic Healthcare Services, Inc. v. Philips RS North America, LLC (Additional Defendant)*** at docket number [330 EDA 2025] (2022 Action)[.] With regard to the instant action, Plaintiff Dynamic Healthcare Servies, Inc. (DHS) is a medical device supplier. Plaintiff Hometown Oxygen, Pittsburgh, LLC (HOP) is DHS's affiliate that entered into financing agreements with Defendant De Lage Landen (DLL). Defendant Philips RS North America, LLC, f/k/a Philips, Inc. (Philips RS) manufactures CPAP, BiPAP and other breathing devices which have been the subject of three (3) separate recalls. Defendant Philips Medical Capital, LLC (PMC) is Philips RS' financing arm. Although additional parties are named in the instant action, the underlying circumstances are essentially similar to the 2022 Action.

DHS and PMC entered into a Master Lease Agreement [("MLA")]; however, Philips RS'[s] recalls frustrated the essential purpose of the MLA. DHS and PMC then engaged in discussions to restructure of terms of the leases; however, during the course of those negotiations, PMC [allegedly] shared commercially sensitive information about DHS with DLL. DLL then allegedly used that information to "cause harm to and interfere with" DHS and HOP's contractual and business relations with a non-party.

Trial Court Opinion, filed 12/27/24, at 2. As is pertinent here, the Complaint alleges, in Count V, tortious interference against Philips RS, and in Count VI, civil conspiracy against PMC, Philips RS, and DLL.

Philips RS filed preliminary objections. As to Counts V and VI, it argued that those counts should be dismissed and sent to arbitration pursuant to the terms of an agreement between DHS and Philips RS, known as the Sleep and Home Respiratory Purchase Agreement ("SHRPA"). In the SHRPA, DHS agreed to purchase breathing devices from Philips RS. The SHRPA set forth the terms related to DHS's purchase of the devices from Philips RS, including the pricing

of the devices, the shipping terms for the devices, the payment terms for the devices, and the limited warranty terms. The SHRPA also contained an arbitration clause, which stated:

> Any controversy or claims arising out of or relating to this Agreement shall be settled by arbitration in Pittsburgh, Pennsylvania in accordance with the Commercial Rules and Procedures of the American Arbitration Association and the substantive laws of the Commonwealth of Pennsylvania without giving effect to principles of conflicts of laws.

SHRPA, at ¶ N.

Philips RS argued that the tort claims against it are subject to arbitration because they arose out of or are related to the devices purchased pursuant to the SHRPA and therefore fall within the scope of the arbitration clause. DHS and HOP countered that Counts V and VI fell outside the scope of the SHRPA and were thus not subject to the arbitration agreement. The allegations in Counts V and VI are as follows:

## Count V: Tortious Interference
### (HOP and DHS v. [Philips RS])

166. Plaintiffs incorporate by reference all of their previous allegations as if fully set forth herein.

167. Prior to the [Philips RS] Recall and PMC granting DHS payment deferrals, DHS had valid contractual relations—the MLA and Leases 41-50—and/or prospective or anticipated contractual relations with PMC.

168. Prior to the [Philips RS] Recall and PMC granting DHS payment deferrals, HOP had valid contractual relations and/or prospective or anticipated contractual relations with DLL and ResMed.

169. [Philips RS] knew of the existence of these agreements.

170. [Philips RS] intentionally interfered with DHS' and HOP's ability to perform under these agreements by marketing, advertising, manufacturing, and selling adulterated breathing devices with known defects and through its own representative, Mr. [Rob] Schade's, bad faith in negotiating the restructured payment plan with DHS on behalf of both PMC and [Philips RS].

171. [Philips RS]' intentional interference caused harm to DHS' contractual relationship with PMC and led to PMC filing [a] lawsuit. Additionally, [Philips RS's] intentional interference led to PMC unlawfully disclosing DHS' confidential financial information to DLL causing harm to DHS's and HOP's contractual and business relations, and/or prospective or anticipated contractual relations with DLL and ResMed.

172. [Philips RS's] actions have been purposeful, improper, and without privilege or justification, and have resulted or have the potential to result in damages and have been taken with malice and intent to injure Plaintiffs.

173. [Philips RS] acted wrongfully and, in doing so, tortiously interfered with the contracts, business relationships, and prospective economic advantage that DHS had with PMC, and DHS and HOP had with DLL and other third parties to benefit its own standing in the restructure negotiations with DHS.

174. As a direct and proximate result of [Philips RS's] tortious interference with Plaintiffs' contractual and business relations, and/or prospective or anticipated contractual relations, Plaintiffs have suffered damages in an amount to be determined at trial.

\*\*\*

**Count VI: Civil Conspiracy**

**(DHS and HOP v. PMC, [Philips RS], and DLL)**

175. Plaintiffs incorporate by reference all of their previous allegations as if fully set forth herein.

176. Defendants agreed and conspired to engage in unlawful trade practices by defrauding DHS into becoming legally committed to paying in full for Recalled Devices that [Philips RS] knew and, upon information and belief, PMC, based on its affiliation with [Philips RS], knew, or reasonably should have known, would be defective and hazardous for consumer use.

177. Defendants effectuated their conspiracy to engage in unlawful trade practices by then unlawfully declaring DHS in default and placing a finance hold on HOP for the lease of equipment from ResMed, to harm HOP's and DHS' standing with ResMed and to gain leverage over DHS in the repayment negotiations with PMC.

178. Defendants' actions were in concert and clearly designed to destroy Plaintiffs' business relationship with ResMed while simultaneously creating leverage against DHS in the negotiations with PMC to restructure Leases 41-50 and obtain full payment for Recalled Devices.

179. Defendants furthered their conspiracy through Mr. Schade's material misrepresentations and bad faith in granting payment deferrals to DHS on behalf of PMC and [Philips RS] following the [Philips RS] Recall and then having PMC unlawfully disclose DHS'[s] confidential financial information to DLL and then DLL notifying ResMed that DLL would not finance any of HOP's purchases for ResMed devices and equipment while negotiations with DHS to restructure Leases 41-50 continued.

180. DLL also expressly admitted that it was using PMC's wrongful declaration of default against DHS as the reason for placing a finance hold on HOP for ResMed breathing devices and equipment, which was displayed through direct email communications between DHS and ResMed and phone conversations between DHS and DLL.

181. Defendants agreed among themselves to act for their mutual benefit, and to the legal detriment of DHS and HOP because DHS and HOP were closed out from obtaining financing for breathing devices and equipment from the two largest manufacturers in the marketplace or were forced to pay significantly higher interest rates to finance their transactions.

> 182. As a direct and proximate result thereof, Plaintiffs have suffered damages in an amount to be determined at trial.

Complaint, filed 5/15/24, at 35-38.

The trial court overruled Philips RS's preliminary objections to Counts V and VI. *See* Order, 12/27/24. This appeal followed.[1]

Philips RS raises the following issue: "Did the [t]rial [c]ourt err by overruling Philips RS's preliminary objection when the parties' contract contains a valid, unambiguous arbitration requirement and when DHS's claims are within the scope of the arbitration clause?" Philips RS's Br. at 4.

Philips RS argues that the trial court erred in overruling its preliminary objections to Counts V and VI because the claims for tortious interference and civil conspiracy "all arise out of or relate to [d]evices purchased pursuant to the SHRPA" and therefore "fall within the scope of the arbitration clause." *Id.* at 15. Philips RS maintains that the claims are "factually premised on some combination of the [r]ecall and the alleged representations by a Philips RS representative (Financial Solutions Specialist Rob Schade) to DHS (not HOP or DLL) relating to supposed payment deferrals on DHS's outstanding payments owed on the PMC Leases." *Id.* at 11. It points out that DHS and HOP "allege that these representations caused DHS not to pay on the PMC Leases and that PMC's subsequent declaration of default caused harm to HOP because DLL would not finance HOP's purchases while DHS was in default to

_____

[1] Pursuant to 42 Pa.C.S.A. § 7321.29(a)(1), an order denying a motion to compel arbitration is appealable as of right.

- 6 -

PMC." *Id.* Philips RS thus argues that since the factual underpinnings of DHS's claims "arise out of or relate to" the devices purchased through SHRPA, DHS should be compelled to arbitrate pursuant to the broad arbitration clause in the agreement. *Id.* at 12-13.

Philips RS further argues that the trial court erred in incorrectly applying the legal standard applicable to the gist of the action doctrine. *Id.* at 12, 18-19. It asserts that the gist of the action framework "has no bearing on whether a claim falls within the scope of an arbitration agreement, particularly where, as here, the arbitration agreement encompasses both contract and tort claims." *Id.* at 12. In Philips RS's view, the court "should have analyzed the actual language of the SHRPA and the factual underpinnings of DHS's claims and compelled arbitration." *Id.* at 20.

DHS and HOP counter that, contrary to Philips RS's assertions, DHS's and HOP's tort claims against it are not centered on its purchase of defective medical devices pursuant to the SHRPA. Appellees' Br. at 2. Instead, "they focus on Philips RS's involvement in the wrongful disclosure of DHS's confidential financial information, which interfered with DHS's prospective contractual relationships with medical device financing companies." *Id.* DHS and HOP argue that "[b]ecause the factual underpinnings of DHS's and HOP's claims in this case have nothing to do with DHS's contract with Philips RS to purchase medical devices, the claims fall outside the scope of the purchase agreement's arbitration provision." *Id.* In sum, they argue:

> DHS's tortious interference and civil conspiracy claims are predicated on the wrongful disclosure of DHS's confidential financial information to DLL. That has nothing to do with DHS's contract to purchase breathing devices more than a year beforehand from Philips RS. DHS's claims do not implicate any contractual obligations under the SHRPA; in fact, they do not require reference to the agreement at all. Even broad arbitration provisions cannot be stretched to encompass claims that have no nexus with the underlying contract.

*Id.* at 16.

Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is "limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Fineman, Krekstein & Harris, P.C. v. Perr*, 278 A.3d 385, 389 (Pa.Super. 2022) (citation omitted). "[W]e employ a two-part test to determine whether the trial court should have compelled arbitration." *Id.* (citation omitted). We first determine whether a valid arbitration agreement exists. *Id.*; *McCrossin v. Comcast Spectacor, LLC*, 311 A.3d 1115, 1122 (Pa.Super. 2024).

We next "determine whether the dispute is within the scope of the agreement." *Fineman*, 278 A.3d at 389 (citation omitted). "Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." *Id.* (citation omitted). "To determine whether a plaintiff's claims fall within the scope of an arbitration clause, we must consider the factual underpinnings of

the claim rather than the legal theory alleged in the complaint." ***Saltzman v. Thomas Jefferson Univ. Hosp., Inc.***, 166 A.3d 465, 476 (Pa.Super. 2017) (internal quotation marks and citation omitted). This Court has explained:

> A broad arbitration clause in a contract is one that is unrestricted, contains language that encompasses all disputes which relate to contractual obligations, and generally includes all claims arising from the contract regardless of whether the claim sounds in tort or contract. Thus, where the arbitration provision is a broad one, and in the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

***Provenzano v. Ohio Valley Gen. Hosp.***, 121 A.3d 1085, 1096 (Pa.Super. 2015) (cleaned up).

Nevertheless, the tort claims at issue must relate to obligations created under the contract and must not be "temporally or factually distinct" to the breach of contract claims. ***Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. and Logistics, Inc.***, 803 A.2d 776, 780 (Pa.Super. 2022). In other words, "a tort claim will fall outside such an agreement to arbitrate if the facts supporting the tort claim are different from the facts supporting the breach of contract claim, and the different behaviors complained of happened during separate time periods." ***Braccia v. ARG CA2PSLB001, LLC***, No. 1456 EDA 2020, 2022 WL 17161, at *5 (Pa.Super. filed Jan. 3, 2022) (unpublished mem.). "If a valid agreement to arbitrate exists and the dispute falls within the scope of that arbitration agreement, the dispute must be submitted to arbitration." ***McCrossin***, 311 A.3d at 1122.

Here, there is no dispute over the existence or validity of the agreement to arbitrate in the SHRPA. We therefore address whether the tort claims are within the scope of the arbitration agreement.

The trial court explained its reason for overruling Philips RS's preliminary objections as follows:

> [T]he claim against Philips RS sounding in tortious interference with contractual and prospective contractual relations (Count V) and the claim against Philips RS sounding in civil conspiracy (Count VI) seek to enforce duties imposed by the law of tort and not to enforce duties arising from the contractual provisions of the SHRPA. A party to an arbitration agreement cannot be compelled to arbitrate claims that fall outside the scope of the agreement.

Trial Ct. Op. at 2-3.

While we agree with the trial court's statement that a party to an arbitration agreement cannot be compelled to arbitrate claims that fall outside the scope of the agreement, we have consistently rejected the notion that a contractual arbitration provision cannot encompass tort claims. *See, e.g., Pittsburgh Logistics Sys.,* 803 A.2d at 782 (holding that tort claims for interference with prospective contractual relationship, breach of fiduciary duties, and misappropriation of trade secrets were within the scope of parties' broad arbitration agreement); *Callan v. Oxford Land Dev., Inc.*, 858 A.2d 1229, 1234 (Pa.Super. 2004) (holding tort claims arising from real estate sales contract were subject to the parties' arbitration agreement); *Warwick Twp. Water and Sewer Auth. v. Boucher & James, Inc.*, 851 A.2d 953, 958 (Pa.Super. 2004) (finding that trial court improperly ruled that the broad

arbitration provision did not apply to the negligence claim). Indeed, "[a]n agreement to arbitrate disputes arising from a contract encompasses tort claims where the facts which support a tort action also support a breach of contract action." **Callan**, 858 A.2d at 1233. We thus disagree with the court's reasoning for its decision. However, since we find that DHS's and HOP's tort claims fall outside the scope of the SHRPA such that the arbitration clause does not apply, we nevertheless agree with the trial court's overruling of the preliminary objections.[2]

We find guidance in this Court's decision in **Setlock v. Pinebrook Pers. Care & Ret. Ctr.**, 56 A.3d 904 (Pa.Super. 2012). There, we affirmed the trial court's dismissal of a personal care facility's petition to compel arbitration of claims related to the facility's negligence when transporting a resident in a wheelchair to a medical appointment. The facility and the resident had previously entered in a "Resident Agreement," which contained a broad arbitration clause. **Id.** at 906. The clause stated, "Any [d]ispute [or] controversy arising out of or in connection with[,] under[,] or pursuant to this Agreement shall be determined by arbitration[.]" **Id.** The complaint alleged that while a transporter from the facility pushed the resident's wheelchair, the resident's "feet became entangled below the wheelchair as she was being pushed causing her to be catapulted through the air from the wheelchair and

_____

[2] This Court may affirm the trial court's order on any proper basis. **Plasticert, Inc. v. Westfield Ins. Co.**, 923 A.2d 489, 492 (Pa.Super. 2007).

landing on her head and face while striking the floor." ***Id.*** The facility filed a petition to compel arbitration based upon the Resident Agreement. ***Id.***

The trial court denied the facility's petition to compel arbitration on the basis "that the Agreement between the parties does not contemplate the arbitration of tort claims[.]" ***Id.*** at 907. This Court affirmed, and concluded that

> the arbitration clause at issue, while broad[], only applies to causes of actions arising from issues governed by the Resident Agreement. Nowhere in said agreement is there a clause governing the standard of medical care to be provided by [the facility's] employees. Moreover, the Resident Agreement does not account for liability of [the facility] based on actions at the facility or off premises at another facility. The mere fact that [the] Resident Agreement included a payment schedule for transporting residents to and from the doctor's appointment cannot be extended to encompass all claims sounding in tort that may have arisen from such transportation. Had the parties intended such an outcome, the Resident Agreement could have expressly included it. In the absence of such a clause we will not extend the agreement beyond that which was intended by the parties.

***Id.*** at 912.

Here, DHS's and HOP's tort claims do not "arise out of" and are not related to the parties' duties under the SHRPA. The SHRPA laid out the terms associated with DHS's purchase of medical devices from Philips RS. The tort claims do not, for instance, implicate any provision of the SHRPA, such as the pricing, shipping, and payment terms of the medical devices. Further, Philips RS's alleged involvement in the disclosure of DHS's confidential information occurred more than one year after the purchase of the devices. Thus, the

- 12 -

claims are "temporally and factually" distinct from the SHRPA and are not within the scope of the arbitration agreement. ***Pittsburgh Logistics Sys.***, 803 A.2d at 780. Since arbitration agreements are to be strictly construed and not extended by implication, ***see Provenzano***, 121 A.3d at 1095, we conclude the trial court properly determined that the tort claims were not subject to the parties' arbitration clause.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/1/2025